LOUIS M. BUBALA III, ESQ.
Nevada State Bar No. 8974
KAEMPFER CROWELL
50 W. Liberty Street, Suite 700
Reno, Nevada  89501
Telephone:  775.852.3900
Facsimile:  775.327.2011
Email:  lbubala@kcnvlaw.com

*Electronically Filed*
*June 9, 2016*

Counsel for Kaempfer Crowell

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| IN RE: | Case No.:  15-15954-abl<br>Chapter 11 |
| PIERCE DEVELOPMENT, INC., | **NOTICE OF INTENT TO ISSUE SUBPOENA DUCES TECUM TO A DEBTOR PURSUANT TO FED. R. BANKR. P. 9016** |
| Debtor. | |

PLEASE TAKE NOTICE that a *Subpoena to Produce Documents, Information, or Objects to Permit Inspection of Premises in a Bankruptcy Case (or Adversary Proceeding)* ("Subpoena") will be issued demanding production of documents to Debtor PIERCE DEVELOPMENT, INC.   The documents must be produced on or before the 24th day of June, 2016, at 10:00 a.m.

Attached hereto and marked as Exhibit 1 is the copy of the above-listed Subpoena to PIERCE DEVELOPMENT, INC.

Dated this 9th day of June, 2016.

KAEMPFER CROWELL

/s/ *Louis M. Bubala III*
Louis M. Bubala III, Esq.
Counsel for Kaempfer Crowell

-1-

**CERTIFICATE OF SERVICE**

Pursuant to FRBP 7005 and FRCP 5(b), I certify that I am an employee of Law Offices of Kaempfer Crowell, that I am over the age of 18 and not a party to the above-referenced case, and that on June 9, 2016 I filed and served the foregoing **NOTICE OF INTENT TO ISSUE SUBPOENA DUCES TECUM TO A DEBTOR PURSUANT TO FED. R. BANKR. P. 9016** as indicated:

_X_   **BY NOTICE OF ELECTRONIC FILING**:  through Electronic Case Filing System of the United States Bankruptcy Court, District of Nevada, to the individuals and/or entities at their email addresses as set forth below:

THOMAS E. CROWE on behalf of Interested Party JANET KATCHEN: tcrowe@thomascrowelaw.com

BRIAN E HOLTHUS on behalf of Creditor SPORTS LICENSED DIVISION OF THE ADIDAS GROUP, LLC:  bankruptcy@juww.com

BRYAN A. LINDSEY on behalf of Debtor PIERCE DEVELOPMENT, INC.: bryan@schwartzlawyers.com, ecf@schwartzlawyers.com;schwartzecf@gmail.com

EDWARD M. MCDONALD on behalf of U.S. Trustee U.S. TRUSTEE - LV – 11: edward.m.mcdonald@usdoj.gov

SAMUEL A. SCHWARTZ on behalf of Debtor PIERCE DEVELOPMENT, INC.: sam@nvfirm.com, ecf@schwartzlawyers.com;schwartzecf@gmail.com

U.S. TRUSTEE - LV – 11:  USTPRegion17.lv.ecf@usdoj.gov

___   **BY MAIL**: by placing the document listed above in a sealed envelope with Postage thereon fully prepaid in the United States Mail at Reno, Nevada, and addressed as set forth below. I am readily familiar with my office's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on June 9, 2016, with postage thereon fully prepaid in the ordinary course of business.

___   **BY DIRECT EMAIL**:  by sending directly to the party / email addresses

I declare under penalty of perjury that the foregoing is true and correct.

DATED:  June 9, 2016.

*/s/  Merrilyn Marsh*_____
An Employee of KAEMPFER CROWELL

1714605_1                           -2-

# Exhibit 1

# Exhibit 1

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (12/15)

# UNITED STATES BANKRUPTCY COURT

District of **NEVADA**

In re **PIERCE DEVELOPMENT, INC.**
_____
Debtor

*(Complete if issued in an adversary proceeding)*

Case No. **BK-S-15-15954-abl**

Chapter **11**

_____
Plaintiff
v.
_____
Defendant

Adv. Proc. No. _____

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A BANKRUPTCY CASE (OR ADVERSARY PROCEEDING)

To: **Custodian of Records, PIERCE DEVELOPMENT INCORPORATED**
*(Name of person to whom the subpoena is directed)*

☒ *Production*: **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:    **SEE ATTACHED EXHIBIT A**

| PLACE  Law Offices of Kaempfer Crowell<br>1980 Festival Plaza Dr., #650, Las Vegas, NV  89135 | DATE AND TIME<br>June 24, 2016, at 10:00 a.m. |
|---|---|

☐ *Inspection of Premises*: **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| PLACE | DATE AND TIME |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45, made applicable in bankruptcy cases by Fed. R. Bankr. P. 9016, are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and 45(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: **June 8, 2016**

CLERK OF COURT

_____          OR          _____
Signature of Clerk or Deputy Clerk                        Attorney's signature

The name, address, email address, and telephone number of the attorney representing *(name of party)*
**KAEMPFER CROWELL**____ , who issues or requests this subpoena are:
 **LOUIS M. BUBALA III, Kaempfer Crowell, 50 W. Liberty St., Ste. 700, Reno, NV  89501, (775) 852-3900**
lbubala@kcnvlaw.com    **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things, or the inspection of premises before trial, a notice and a copy of this subpoena must be served on each party before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

B2570 (Form 2570 – Subpoena to Produce Documents, Information, or Objects or To Permit Inspection in a Bankruptcy Case or Adversary Proceeding) (Page 2)

## PROOF OF SERVICE
### (This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)

I received this subpoena for *(name of individual and title, if any)*: _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $ _____ .

My fees are $ _____ for travel and $_____ for services, for a total of $_____ .

       I declare under penalty of perjury that this information is true and correct.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information concerning attempted service, etc.:

# Federal Rule of Civil Procedure 45(c), (d), (e), and (g) (Effective 12/1/13)
## (made applicable in bankruptcy cases by Rule 9016, Federal Rules of Bankruptcy Procedure)

**(c) Place of compliance.**

*(1) For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
(A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
(B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
(i) is a party or a party's officer; or
(ii) is commanded to attend a trial and would not incur substantial expense.

*(2) For Other Discovery.* A subpoena may command:
(A) production of documents, or electronically stored information, or things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
(B) inspection of premises, at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

*(1) Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction — which may include lost earnings and reasonable attorney's fees — on a party or attorney who fails to comply.

*(2) Command to Produce Materials or Permit Inspection.*
*(A) Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
*(B) Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises — or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
(i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
(ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

*(3) Quashing or Modifying a Subpoena.*
*(A) When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.
*(B) When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
(i) disclosing a trade secret or other confidential research, development, or commercial information; or

(ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
*(C) Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
(i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
(ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

*(1) Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
*(A) Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
*(B) Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
*(C) Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
*(D) Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

*(2) Claiming Privilege or Protection.*
*(A) Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
(i) expressly make the claim; and
(ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
*(B) Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.
…
**(g) Contempt.** The court for the district where compliance is required – and also, after a motion is transferred, the issuing court – may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013)

## EXHIBIT "A"

## <u>DOCUMENTS REQUEST</u>

The following definitions are to be used with respect to these documents:

A.    The word "document" means and includes any kind of written, typewritten, printed or recorded material whatsoever, regardless of the source or author thereof, including but not limited to, correspondence, letters, notes, memoranda, papers, business records, account ledgers, bank statement, bank checks, statistical records, journals, diaries, transaction files, appointment books, desk calendars, minutes of meetings, contracts, agreements, understandings, commitments, documents of title, instruments of assignment, transfer or conveyance, books, drawings, photographs, pictures, charts, dictated tapes, taped recordings, phonograph recordings, transcriptions, data processing cards, and any other means by which data is stored or preserved electrically, electronically, magnetically or mechanically, including computer generated information, and any other "writing" or "recording" encompassed within Rule 1004 of the Federal Rules of Evidence.   The word "document" also includes, without limitation, all originals, all file copies, all drafts, all extracts and summaries, and all copies not identical to the original, no matter how prepared, of any of the above items.

B.    "Relating or referring" are used in their broadest sense and shall mean and include, but shall not be limited to, advert, allude, comprise, concern, constitute, describe, discuss, mention, note, pertain, quote, recite, recount, report or state.

C.    The singular shall include the plural, and the plural shall include the singular.   The conjunctive "and" shall include the disjunctive "or" and the disjunctive "or" shall include the conjunctive "and."

D.    Each document produced pursuant to this request shall be produced as it is kept in the usual course of business (i.e., in the file folder or binder in which such documents were located when the request was served) or shall be organized and labeled to correspond to the categories of documents requested.

E.    You are instructed to produce any and all documents which are in your possession, custody or control.   Possession, custody or control includes constructive possession whereby you have a right to compel the production of a matter from a third party (including an agency, authority or representative).

F.    To the extent the location of any document called for by this Exhibit is unknown to you, so state. If any estimate can reasonably be made as to the location of an unknown document, describe the document with sufficient particularity so that it can be identified, set forth your best estimate of the document's location, and describe the basis upon which the estimate is made.

G.    If any document has been lost or destroyed, the document so lost or destroyed shall be identified by author, date, subject matter, date of loss or destruction, identity of person responsibility for loss or destruction and, if destroyed, the reason for such destruction.

H.      "Affiliate" shall mean any corporation, partnership, joint venture, or other entity either owned by you, in whole or in part, or controlled by you, either in whole or in part.

I.      "Coverage period" identifies the period from 2007 to the present.

## Documents to be Produced

All requests cover the period 2007 to the present, based on the 2007 acquisition of real property identified as Clark County Assessors Parcel Number 139-33-810-007 by Grand Central South Partners, LLC.

1.      All records concerning Clark County Assessors Parcel Number 139-33-810-007, including purchase agreements, financing agreements, loan documents, loan payments, debt calculations, development contracts, appraisals, and brokers price opinions.

2.      All tax returns for Pierce Development, Inc.

3.      All operating agreements, and amendments thereto, for Pierce Development, Inc.

4.      All membership or Stock Certificates for Pierce Development, Inc.

5.      All financial statements for Pierce Development, Inc.

6.      All profit/loss statements for Pierce Development, Inc.

7.      All balance sheets for Pierce Development, Inc.

8.      All tax returns for Grand Central South Partners, LLC.

9.      All operating agreements, and amendments thereto, for Grand Central South Partners, LLC.

10.     All membership certificates for Grand Central South Partners, LLC.

11.     All financial statements for Grand Central South Partners, LLC.

12.     All profit/loss statements for Grand Central South Partners, LLC.

13.     All balance sheets for Grand Central South Partners, LLC.

14.     All records identifying the current and past owner(s) of Grand Central South Partners, LLC.

15.     All records identifying the amount of ownership interests in Grand Central South Partners, LLC.

16.     All records identifying ownership contributions in Grand Central South Partners, LLC.

17. All tax returns for Grand Central Holdings, LLC.

18. All membership certificates for Grand Central Holdings, LLC.

19. All operating agreements, and amendments thereto, for Grand Central Holdings, LLC.

20. All financial statements for Grand Central Holdings, LLC.

21. All profit/loss statements for Grand Central Holdings, LLC.

22. All balance sheets for Grand Central Holdings, LLC.

23. All records identifying the current and past owner(s) of Grand Central Holdings, LLC.

24. All records identifying the amount of ownership interests in Grand Central Holdings, LLC.

25. All records identifying ownership contributions in Grand Central Holdings, LLC.

26. All tax returns for Grand Central South Property Holdings, LLC.

27. All operating agreements, and amendments thereto, for Grand Central South Property Holdings, LLC.

28. All membership certificates for Grand Central South Property Holdings, LLC.

29. All financial statements for Grand Central South Property Holdings, LLC.

30. All profit/loss statements for Grand Central South Property Holdings, LLC.

31. All balance sheets for Grand Central South Property Holdings, LLC.

32. All records identifying the current and past owner(s) of Grand Central South Property Holdings, LLC.

33. All records identifying the amount of ownership interests in Grand Central South Property Holdings, LLC.

34. All records identifying ownership contributions in Grand Central South Property Holdings, LLC.

35. All tax returns for The Merrill Group of Companies, LLC.

36. All operating agreements, and amendments thereto, for The Merrill Group of Companies, LLC.

37. All membership certificates for The Merrill Group of Companies, LLC.

38.    All financial statements for The Merrill Group of Companies, LLC.

39.    All profit/loss statements for The Merrill Group of Companies, LLC.

40.    All balance sheets for The Merrill Group of Companies, LLC.

41.    All records identifying the current and past owner(s) of The Merrill Group of Companies, LLC.

42.    All records identifying the amount of ownership interests in The Merrill Group of Companies, LLC.

43.    All records identifying ownership contributions in The Merrill Group of Companies, LLC.

44.    All tax returns for Iron Horse Partners, LLC.

45.    All operating agreements, and amendments thereto, for Iron Horse Partners, LLC.

46.    All membership certificates for Iron Horse Partners, LLC.

47.    All financial statements for Iron Horse Partners, LLC.

48.    All profit/loss statements for Iron Horse Partners, LLC.

49.    All balance sheets for Iron Horse Partners, LLC.

50.    All records identifying the current and past owner(s) of Iron Horse Partners, LLC.

51.    All records identifying the amount of ownership interests in Iron Horse Partners, LLC.

52.    All records identifying ownership contributions in Iron Horse Partners, LLC.

53.    All tax returns for Pierce Development Corporation, Inc.

54.    Operating agreements, and amendments thereto, for Pierce Development Corporation, Inc.

55.    Membership or Stock Certificates for Pierce Development Corporation, Inc.

56.    All financial statements for Pierce Development Corporation, Inc.

57.    All profit/loss statements for Pierce Development Corporation, Inc.

58.    All balance sheets for Pierce Development Corporation, Inc.

59.    All records identifying the current and past owner(s) of Pierce Development Corporation, Inc.

60.    All records identifying the amount of ownership interests in Pierce Development Corporation, Inc.

61.    All records identifying ownership contributions in Pierce Development Corporation, Inc.

62.    All tax returns for TMGC Building Services, Inc.

63.    Operating agreements, and amendments thereto, for TMGC Building Services, Inc.

64.    Membership or Stock Certificates for TMGC Building Services, Inc.

65.    All financial statements for TMGC Building Services, Inc.

66.    All profit/loss statements for TMGC Building Services, Inc.

67.    All balance sheets for TMGC Building Services, Inc.

68.    All records identifying the current and past owner(s) of TMGC Building Services, Inc.

69.    All records identifying the amount of ownership interests in TMGC Building Services, Inc.

70.    All records identifying ownership contributions in TMGC Building Services, Inc.

71.    The promissory note between Grand Central South Property Holdings, LLC and Iron Horse Partners, LLC underlying the 2012 deed of trust recorded against real property located in Clark County, Nevada, identified as Assessor's Parcel No. 139-33-810-007 in favor of Grand Central South Property Holdings, LLC.   The deed of trust is attached hereto as Exhibit 1.

72.    All records and communications regarding negotiation of the promissory note between Grand Central South Property Holdings, LLC and Iron Horse Partners, LLC.

73.    All records and communications that identify the assets purchased with the funding from the promissory note between Grand Central South Property Holdings, LLC and Iron Horse Partners, LLC.

74.    Any communication with a representative of your entity and any of the following persons:  Craig Katchen; Janet Bryant; Janet Katchen; David Frank; Mary Ann Sigler; Eva Kalawski; Fred Seto; any representative or agent of Pierce Development, Inc.; Pierce Development Corporation, Inc.; Grand Central South Partners, LLC; Grand Central Holdings, LLC; Grand Central South Property Holdings, LLC; The Merrill Group of Companies, LLC; Iron Horse Properties, LLC; TMGC Building Services, LLC; and/or Platinum Equity, LLC, regarding the following topics:

     a.    The underlying promissory note and/or 2007 deed of trust recorded against Clark County, Nevada, APN 139-33-810-007 in favor of Community Bank of Nevada.   The deed of trust is attached hereto as Exhibit 2;

     b.    The underlying promissory note and/or 2012 deed of trust recorded against Clark County, Nevada, APN 139-33-810-007 in favor of Grand Central South Property

Holdings, LLC.   The deed of trust is attached hereto as Exhibit 1;

c.        The bankruptcy case of Pierce Development, Inc., Case No. 15-15954, pending in the District of Nevada.

# Exhibit 1

# Exhibit 1

Inst #: 201209040002157
Fees: $45.00
N/C Fee: $25.00
09/04/2012 02:03:49 PM
Receipt #: 1294951
Requestor:
FIRST AMERICAN TITLE NCS LA
Recorded By: MAT    Pgs: 29
DEBBIE CONWAY
CLARK COUNTY RECORDER

APN[s]: 139-33-810.007

**RECORDING REQUESTED BY, AND
WHEN RECORDED RETURN TO:**

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP
10250 Constellation Boulevard, Nineteenth Floor
Los Angeles, California 90067
Attention: Roger Howard, Esq.

NCS-533031

# DEED OF TRUST,
# SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES,
# AND FIXTURE FILING

THIS DEED OF TRUST, SECURITY AGREEMENT, ASSIGNMENT OF RENTS AND LEASES AND FIXTURE FILING (this "*Deed of Trust*"), is made and entered into as of ~~June 31~~, 2012, by Grand Central South Partners, LLC, a Nevada limited liability company ("*Trustor*"), in favor of First American Title Insurance Company ("*Trustee*"), whose address is 777 South Figueroa Street, Suite 400, Los Angeles, CA 90017, as trustee, for the benefit of Grand Central South Property Holdings, LLC, a Delaware limited liability company (together with its successors in such capacity, "*Beneficiary*"), whose address is 360 N. Crescent Drive, South Building, Beverly Hills, CA 90210.

THIS INSTRUMENT IS TO BE FILED AND INDEXED IN THE REAL ESTATE RECORDS AND IS ALSO TO BE INDEXED IN THE INDEX OF FINANCING STATEMENTS OF CLARK COUNTY, NEVADA UNDER GRAND CENTRAL SOUTH PARTNERS, LLC. INFORMATION CONCERNING THE SECURITY INTEREST MAY BE OBTAINED FROM BENEFICIARY AT THE ADDRESS SET FORTH ABOVE.

## RECITALS

A.    In order to finance a portion of the purchase price of a certain promissory note and related loan documents, Beneficiary provided certain financing to Iron Horse Partners, LLC ("Iron Horse" or "Borrower") evidenced by that certain Promissory Note of even date herewith in the principal amount of ONE MILLION FOUR HUNDRED FORTY THOUSAND DOLLARS ($1,440,000) executed by Iron Horse in favor of Beneficiary (the "*Note*"). The obligations of Iron Horse under the Note are guaranteed by Trustor pursuant to that certain Guaranty of even date herewith executed by Trustor in favor of Beneficiary (the "*Guaranty*").

1

B.      Trustor is the owner of fee simple interest in certain real property more particularly described on Exhibit A attached hereto located in the County of Clark, State of Nevada (the "*Real Property*").

C.      The Guaranty requires that the obligations, indebtedness, liabilities and other obligations of Trustor under the Guaranty be secured by liens and security interests covering Trustor's interest in the Real Property. In connection therewith, Trustor is executing and delivering this Deed of Trust in accordance with the Guaranty.

D.      All terms used herein and not otherwise defined herein, in the Guaranty or in the Note shall have the meanings given to such terms on Schedule 1 attached hereto.

AGREEMENT

NOW, THEREFORE, in consideration of the foregoing premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Trustor hereby agrees as follows:

All of the following property constitutes and is collectively called herein the "*Collateral*":

All of Trustor's RIGHT, TITLE AND INTEREST in the Real Property whether now owned or hereafter acquired (the "*RP Collateral*");

TOGETHER WITH all right, title and interest of Trustor in and to the following, whether now owned or hereafter acquired: (a) all improvements (including, without limitation, all infrastructure improvements and public improvements) now or hereafter attached to or placed, erected, constructed or developed on the Real Property or otherwise affixed thereto in such manner that such items are not deemed to be personal property under the laws of the State of Nevada (the "State") (collectively, the "*Improvements*"); (b) any and all fixtures, furnishings, equipment, machinery, or furniture ("*FF&E*") now or hereafter located on the Real Property or in the Improvements or used in connection with the development, construction, use, occupancy, operation and maintenance of all or any part of the Real Property or the Improvements, including construction equipment, machinery, signs, artwork, furnishings, specialized fixtures, furnishings and equipment relating to Trustor's development of the Real Property, and all renewals of or replacements or substitutions for any of the foregoing, whether or not the same are or shall be attached to the Real Property or Improvements; (c) all water and water rights, water stock, timber, crops, and mineral interests pertaining to the Real Property; (d) all building materials and equipment now or hereafter delivered to and intended to be installed in or on the Real Property or the Improvements; and all plans and specifications for the Improvements; (e) all special improvement districts or any similar public financing vehicles which relate to the Real Property or the Improvements (or future Improvements) and any reimbursement rights of Trustor relating thereto; (f) all legally assignable entitlements, permits, licenses, franchises, certificates, and other rights and privileges necessary for the use or occupancy of the Real Property, Improvements & FF&E ("*Permits*"); (g) all proceeds arising from or by virtue of the sale, lease or other disposition of the Real Property, the Improvements or the FF&E; (h) all proceeds (including premium refunds) of each policy of insurance relating to the Real Property, the Improvements or

2



the FF&E; (i) all proceeds from the taking or condemnation of any of the Real Property, the Improvements, the FF&E or any rights appurtenant thereto by right of eminent domain or by private or other purchase in lieu thereof, including change of grade of streets, curb cuts or other rights of access, for any public or quasi-public use under any law; (j) all streets, roads, public places, easements and rights-of-way, existing or proposed, public or private, adjacent to or used in connection with, belonging or pertaining to the Real Property; (k) subject to the terms and conditions of the license in favor of Trustor granted in Article II below, all of the leases, rents, royalties, bonuses, issues, profits, revenues or other benefits of the Real Property, the Improvements or the FF&E, including guaranties, cash or securities deposited pursuant to leases to secure performance by the lessees of their obligations thereunder; (l) all fees, charges, accounts and/or other payments for the use or occupancy of any portion of the Improvements; (m) all rights, hereditaments and appurtenances pertaining to the foregoing; and (n) other interests of every kind and character that Trustor now has or at any time hereafter acquires in and to the Real Property, Improvements and FF&E described herein and all other real property, improvements and FF&E that is used or useful in connection therewith, including rights of ingress and egress and all reversionary rights or interests of Trustor with respect to such property.

Trustor, to secure the Secured Obligations (as defined below), does hereby:

A.    Grant, bargain, sell, assign, convey, hypothecate and transfer unto Trustee, IN TRUST, WITH POWER OF SALE, for the benefit of Beneficiary, all of such Trustor's interest in the Collateral that constitutes real property under the laws of the State, TO HAVE AND TO HOLD the RP Collateral, together with the rights, privileges and appurtenances thereto belonging, unto Trustee and its substitutes or successors in trust, however, to satisfy payment of the indebtedness as hereinafter set forth;

B.    Grant a security interest to Beneficiary in such Trustor's interest in those portions of the Collateral that either are fixtures or are not RP Collateral under the laws of the State, including the UCC Collateral (as defined in Article III below), but subject to the rights of Beneficiary under the assignment made in the immediately following paragraph; and

C.    Absolutely and unconditionally assign and transfer to Beneficiary all of such Trustor's interest in the Leases and the Rents (each as defined in Article II below) and other benefits derived from the Leases, whether now existing or hereafter created, all subject to the terms and conditions of the revocable license in favor of Trustor granted in Article II below.

IN FURTHERANCE OF THE FOREGOING GRANTS (INCLUDING GRANTS OF SECURITY INTERESTS), BARGAINS, SALES, ASSIGNMENTS, HYPOTHECATIONS, TRANSFERS AND CONVEYANCES, AND TO PROTECT THE COLLATERAL AND THE SECURITY GRANTED BY THIS DEED OF TRUST, TRUSTOR HEREBY WARRANTS, REPRESENTS, COVENANTS AND AGREES AS FOLLOWS:

## 1.    SECURED OBLIGATIONS.

1.1    <u>Guaranty</u>.  This Deed of Trust is given for the purpose of securing all of the indebtedness, liabilities and obligations of every type and nature of Trustor under the Guaranty

3

(all such indebtedness and obligations collectively, for purposes of this Deed of Trust, the "*Secured Obligations*").

    1.2    <u>Term of Deed of Trust</u>.  The term of this Deed of Trust shall be the period from the date of this Deed of Trust through the date upon which all Secured Obligations have been paid or performed in full (as the case may be).  Upon the payment and performance in full of the Note, the Guaranty and the Secured Obligations, Beneficiary shall promptly execute a full substitution of trustee and release and reconveyance of this Deed of Trust ("*Reconveyance*") in form appropriate for recording and deliver such Reconveyance to Trustor.

## 2.    ASSIGNMENT OF RENTS AND LEASES.

    2.1    <u>Assignment of Rents, Profits, etc.</u>  As further security for the Secured Obligations, all of Trustor's right, title and interest in the rents, royalties, bonuses, issues, profits, revenue and income derived from the Collateral or arising from the use or enjoyment of any portion thereof or from any lease or agreement pertaining thereto, and liquidated damages following default under such leases, and all proceeds payable under any policy of insurance covering loss of rents resulting from untenantability caused by damage to any part of the Collateral, together with any and all rights that Trustor may have against any tenant under such leases or any subtenants or occupants of any part of the Collateral (hereinafter called the "*Rents*"), are hereby absolutely and unconditionally assigned to Beneficiary, to be applied by Beneficiary in payment of the Secured Obligations.

    2.2    <u>Assignment of Leases</u>.  As further security for the Secured Obligations, Trustor hereby assigns to Beneficiary any and all of such Trustor's right, title and interest as lessor in and to all existing and future leases respecting the Real Property or Improvements, including subleases thereof, and any and all extensions, renewals, modifications and replacements thereof, upon any part of the Collateral (the "*Leases*").  Trustor hereby further assigns to Beneficiary all guaranties of tenants' performance under the Leases.

    2.3    <u>License</u>.  Notwithstanding the foregoing provisions and subject to the terms of the Guaranty, so long as no Event of Default (defined below in Article VII) shall exist and be continuing under this Deed of Trust, Trustor shall have the right and license to collect, receive, use and enjoy the Rents and other sums payable under and by virtue of any Lease, and Trustor shall have the right to enforce the covenants of such Leases and other agreements and arrangements, and the right to enter into, modify and terminate such Leases and other agreements and arrangements in good faith (subject to the terms of the Guaranty).  Upon the occurrence of an Event of Default and during the continuance thereof, such license in favor of Trustor shall automatically and immediately terminate upon notice to such Trustor, and Beneficiary shall be entitled thereupon to receive and collect the Rents personally or through an agent or a receiver so long as any such Event of Default shall exist, during pendency of any foreclosure proceedings and during any redemption period.

    2.4    <u>Warranties Concerning Leases and Rents</u>.  Trustor represents and warrants that as of the date hereof, except as may be set forth in the Permitted Title Exceptions, there are no Leases affecting all or a portion of the Real Property.

4



2.5    <u>Trustor's Covenants of Performance</u>.  Trustor covenants and agrees to:

(a)    defend, at such Trustor's expense, any proceeding, legal or otherwise, pertaining to the Leases, including, if Beneficiary so requests, any such proceeding to which Beneficiary is a party;

(b)    neither create nor permit any encumbrance upon its interest as lessor of the Leases, except this Deed of Trust;

(c)    cause all Leases hereafter entered into by Trustor to provide that if Beneficiary forecloses under this Deed of Trust, then the tenant shall attorn to Beneficiary or its assignee and the Lease will remain in full force and effect in accordance with its terms notwithstanding such foreclosure; and

(d)    To the extent Trustor enters into any Leases from and after the date hereof, Trustor covenants and agrees at Trustor's sole cost and expense to:  (i) perform the obligations of lessor contained in the Leases and enforce by all available remedies performance by the lessees of the obligations of the lessees contained in the Leases; (ii) not do or fail to do, or permit or fail to permit to be done, any act or thing, the doing or omission of which will give any tenant under any of the Leases a right to terminate its Lease or to abate any rental or other payment due thereunder; (iii) give Beneficiary prompt written notice of any material default known to Trustor which occurs with respect to any of the Leases, whether the default be that of the lessee or of the lessor; (iv) exercise Trustor's best efforts to keep the Real Property leased at all times at rentals not less than the fair market rental value; (v) obtain Beneficiary's prior consent before entering into any future leases, which consent shall be granted or withheld in Beneficiary's sole and absolute discretion; and (vi) execute and promptly record such additional assignments of any Lease or specific subordinations of any Lease to the Deed of Trust, in form and substance acceptable to Beneficiary, as Beneficiary may reasonably request; provided, however, that any such additional assignments of any Lease or specific subordinations of any Lease to this Deed of Trust shall neither materially increase Trustor's obligations under this Deed of Trust nor materially decrease its rights under this Deed of Trust.  In the event of a default under any of the Leases by reason of failure of Trustor to keep or perform one or more of the covenants, agreements or conditions thereof, Beneficiary is hereby authorized and empowered, and may upon  notice to Trustor, at its sole option, but without any obligation to do so, remedy, remove or cure any such default, and further, Beneficiary may, at its sole option and in its sole discretion, but without any obligation to do so, pay any sum of money deemed necessary by it for the performance of said covenants, agreements and conditions, or for the curing or removal of any such default, and incur all reasonable expenses and obligations which it may consider necessary or reasonable in connection therewith, and Trustor shall repay on demand all such sums so paid or advanced by Beneficiary together with interest thereon until paid at the rate of interest then applicable to the principal balance of the Note.  Any request by Trustor for Beneficiary's consent to the terms of a proposed Lease shall be accompanied by the proposed lessee's (1) current and twelve (12) month's trailing income statement, balance sheet and statements of cash flows, and (2) a Dunn and Bradstreet credit report.  Any attempted action in violation of the provisions of this Section shall be null and void.  Without in any way limiting the requirement of Beneficiary's consent hereunder, any sums received by Trustor in consideration of any termination (or the release or discharge of any lessee), modification or amendment of any Lease shall be applied to

5



reduce the outstanding Secured Obligations and any such sums received by Trustor shall be held in trust by Trustor for such purpose.

      2.6    <u>Beneficiary in Possession</u>.  Beneficiary's acceptance of this assignment shall not, prior to entry upon and taking possession of the Collateral by Beneficiary, be deemed to constitute Beneficiary a "mortgagee in possession," nor obligate Beneficiary to appear in or defend any proceeding relating to any of the Leases or to the Collateral, take any action hereunder, expend any money, incur any expenses, or perform any obligation or liability under the Leases, or assume any obligation for any deposits delivered to Trustor by any lessee and not delivered to Beneficiary.  Beneficiary shall not be liable for any injury or damage to person or property in or about the Collateral unless caused by the gross negligence or willful misconduct of Beneficiary as determined by a court of competent jurisdiction.

      2.7    <u>Indemnification</u>.  Trustor hereby indemnifies, agrees to defend, and holds each Indemnitee (as defined herein) harmless from any and all costs, losses, claims, damages, liabilities and expenses (including the reasonable fees, charges and disbursements of any counsel for any Indemnitee) of any kind or nature whatsoever, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of any claims under the Leases, including any claims by any Trustor with respect to payments of Rents made directly to Beneficiary during the continuation of an Event of Default and claims by tenants for security deposits or for rental payments more than one (1) month in advance and not delivered to Beneficiary; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such costs, losses, claims, damages, liabilities and expenses are determined by a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of such Indemnitee.

      2.8    <u>Records</u>.  If requested by Beneficiary, Trustor shall deliver to or cause to be delivered to Beneficiary a copy of the executed originals of all Leases and after an Event of Default executed originals thereof in such Trustor's possession or control.

      2.9    <u>Right to Rely</u>.  Trustor hereby authorizes and directs the tenants under the Leases to pay Rents to Beneficiary upon written demand by Beneficiary provided such demand shall be given only if an Event of Default exists and is continuing, without further consent of such Trustor, and the tenants may rely upon any such written statement delivered by Beneficiary to the tenants (including with respect to the existence and continuation of an Event of Default).  Any such payment to Beneficiary shall constitute payment to such Trustor under the applicable Leases.

### 3.    SECURITY AGREEMENT.

      3.1    <u>Security Interest</u>.  This Deed of Trust shall also be a security agreement between Trustor and Beneficiary covering the Collateral constituting personal property or fixtures (hereinafter collectively called "*UCC Collateral*") governed by the Uniform Commercial Code ("*UCC*") as adopted by the State of Nevada (hereinafter called the "*Code*") as the same may be more specifically set forth in any financing statements delivered in connection with this Deed of Trust, and as further security for the payment and performance of the Secured Obligations, Trustor hereby grants to Beneficiary, a first priority security interest in any and all UCC

764123.1



Collateral, whether now owned or hereafter acquired by Trustor. In addition to Beneficiary's other rights hereunder, Beneficiary shall have all rights of a first priority secured party under the Code. Trustor shall bear all costs of filing financing and continuation statements and amendments, including all Code searches. If Beneficiary should dispose of any UCC Collateral pursuant to the Code after the occurrence and during the continuation of an Event of Default, ten (10) days' prior written notice by Beneficiary to Trustor shall be deemed to be reasonable notice; *provided, however*, Beneficiary may direct Trustee to dispose of such property in accordance with the foreclosure procedures of this Deed of Trust in lieu of proceeding under the Code.

       3.2    <u>Notice of Changes</u>. Trustor shall not, voluntarily or involuntarily, change its name, identity or legal structure, unless Trustor shall have given to Beneficiary prior written notice of any such proposed change and shall have authorized Beneficiary, prior to or concurrently with the occurrence of any such change, to file all additional financing statements or other documents that may be required to perfect, protect and preserve Beneficiary's security interest with respect to any Collateral described or referred to herein, all in form and substance reasonably satisfactory to Beneficiary.

       3.3    <u>Fixtures</u>. The Real Property is specifically described on <u>Exhibit A</u> attached hereto. Some of the items of the Collateral described herein constitute property that is or will become fixtures related to the Real Property, and it is intended that, as to those items, this Deed of Trust shall be effective as a financing statement filed as a fixture filing from the date of its filing for record in the real estate records where this Deed of Trust is recorded.   For this purpose, (a) Trustor is a "debtor" and its address for the purpose of obtaining information is the address given in the initial paragraph of this Deed of Trust; (b) the "secured party" is Beneficiary, and its address for the purpose of obtaining information is the address given for it in the initial paragraph of this Deed of Trust; and (c) the real estate to which the fixtures are or are to become attached is Trustor's interest in the Real Property.

## 4.     REPRESENTATIONS, WARRANTIES, COVENANTS AND AGREEMENTS OF TRUSTOR.

       Trustor does hereby covenant and agree for the benefit of Beneficiary, and Trustor does hereby warrant and represent to Beneficiary as of the date of recording this Deed of Trust as follows:

       4.1    <u>Payment and Performance</u>. Trustor shall make all payments when due under the Guaranty and shall punctually and properly perform all of Trustor's covenants, obligations and liabilities under the Guaranty and this Deed of Trust.

       4.2    <u>Title to Collateral and Lien of this Deed of Trust</u>. Trustor represents and warrants that Trustor holds and will maintain (i) good, marketable and insurable title to the fee simple ownership in the Real Property, subject to Permitted Title Exceptions as of the date hereof, (ii) good title to the Improvements thereon, subject to Permitted Title Exceptions as of the date hereof, and (iii) good title to the FF&E, free and clear of any Liens except for Liens permitted herein. Trustor further represents, warrants and covenants that this Deed of Trust shall constitute a first priority Lien on the Real Property. Trustor will not create or suffer to exist any Lien on its interest in the Real Property  (other than the Permitted Title Exceptions as of the date hereof). If

7



the first priority Lien created by this Deed of Trust or any other interest of Beneficiary in the Collateral shall be endangered or shall be attacked, directly or indirectly, Trustor, at Trustor's expense, will take all necessary and proper steps for the defense of such interest, including the employment of counsel reasonably satisfactory to Beneficiary, the prosecution or defense of litigation, and the compromise or discharge of claims made against such interest.

Trustor shall not suffer any Lien of mechanics or materialmen to be perfected by the filing of any lawsuit therefore respecting any part of the Real Property. If Trustor shall fail to discharge or otherwise release such Lien by posting a bond as provided in NRS 108.2413 with respect to any such Lien or cause such Lien to be released within forty-five (45) days after it is recorded, then, upon written notice to Trustor and in addition to any other right or remedy of Beneficiary, Beneficiary may, but shall not be obligated to, discharge or release the same, either by paying the amount claimed to be due, or by procuring the discharge or release of such Lien by posting a bond as provided in NRS 108.2413 et seq., or otherwise giving security for such claim, or by taking such action as may be prescribed by law.

4.3     Taxes on Deed of Trust. If at any time any law shall be enacted imposing or authorizing the imposition of any tax, assessment or other fees upon this Deed of Trust, or upon any rights, titles, liens or security interests created hereby, Trustor shall pay all such taxes, assessments or other fees prior to delinquency. If it is unlawful for any Trustor to pay such taxes, assessments or other fees, then Trustor agrees to promptly reimburse Beneficiary for the amounts incurred by Beneficiary to pay such taxes, assessments or other fees.

4.4     [Intentionally deleted]

4.5     Repair, Waste, Alterations, etc. Trustor covenants: (a) to keep the Real Property in good operating order, repair and condition in all material respects, consistent with prior use, ordinary wear and tear and casualty excepted; (b) not to remove or demolish the Property or any material part thereof without Beneficiary's prior written consent; (c) not to structurally alter, in any respect, any component of the Improvements, without beneficiary's prior written consent, which shall be granted or withheld in Beneficiary's sole and absolute discretion; (d) to complete or restore promptly and in good and workmanlike manner the Real Property or any part thereof which may be damaged or destroyed (unless Beneficiary elects to require that insurance proceeds be used to reduce the Secured Obligations); (e) not to suffer violation of any, and to comply in all material respects with all: (i) laws, ordinances, regulations and standards applicable to the Real Property; (ii) all covenants, conditions, restrictions and equitable servitudes, whether public or private, of every kind and character applicable to the Real Property; and (iii) all requirements of insurance companies and any bureau or agency which establishes standards of insurability, which laws, covenants or requirements affect the Real Property and pertain to acts committed or conditions existing thereon, including, without limitation, such work or alteration, improvement or demolition as such laws, covenants or requirements mandate; (f) not to initiate or acquiesce in any change in any zoning which affects the Real Property without Beneficiary's prior written consent which shall not be unreasonably withheld or delayed; (g) not to materially alter the occupancy or use of all or any part of the Real Property without the prior written consent of Beneficiary; and (h) not to commit any material physical waste of the Real Property (including the actual authorization by Trustor of the commission by others of such material physical waste of the Real Property), including, without limitation, failure to maintain the Real Property in a

8

commercially reasonable manner. Notwithstanding anything herein to the contrary, Trustor shall have the right to remove and replace the FF&E as Trustor may deem appropriate in the ordinary course of Trustor's business and as otherwise permitted herein. Notwithstanding anything in this Deed of Trust to the contrary, Beneficiary acknowledges that as of the date hereof (i) there are no Improvements located on the Real Property, and (ii) Beneficiary acknowledges that there may be hazardous materials located on, about or under the Real Property which predate Trustor and Trustor's affiliate's acquisition of the Real Property ("*Prior Environmental Conditions*"). Accordingly, Beneficiary acknowledges and agrees that unless and until any Improvements are constructed on the Real Property, that the covenants contained in Section 4.5(c) shall not be applicable. In addition, notwithstanding anything to the contrary set forth in this Deed of Trust, the existence of the Prior Environmental Conditions shall not be a default or Event of Default under this Deed of Trust.

4.6     Hold Harmless. Trustor shall indemnify Beneficiary, Beneficiary's successors, members, managers, assigns, subsidiaries, affiliates, attorneys and agents (including Trustee) (each such person or entity being called an "*Indemnitee*") against, and hold each Indemnitee harmless from, any and all costs, losses, claims, damages, liabilities and expenses (including, without limitation, the reasonable out-of-pocket fees, charges and disbursements of any counsel and consultants for any Indemnitee) of any kind or nature whatsoever, incurred by or asserted against any Indemnitee arising out of, in connection with, or as a result of (i) the enforcement of this Deed of Trust or the performance by Trustor of its obligations hereunder, or (ii) any actual or prospective claim, litigation, investigation or proceeding relating to any of the foregoing, whether based on contract, tort or any other theory and regardless of whether any Indemnitee is a party thereto; provided that such indemnity shall not, as to any Indemnitee, be available to the extent that such costs, losses, claims, damages, liabilities and expenses are determined by a court of competent jurisdiction are attributable to the gross negligence or willful misconduct of such Indemnitee.

4.7     Covenants; Further Assurances.

(a)     Concurrently with the date herewith, Trustor shall cause to be delivered to Beneficiary at Trustor's expense, one or more ALTA extended coverage Lender's Policies of Title Insurance (or a commitment, in form and content satisfactory to Beneficiary, to issue such a policy or policies) showing fee title to the Real Property vested in Trustor and the lien of this Deed of Trust to be a perfected lien, prior to any and all encumbrances.

(b)     At Beneficiary's request, Trustor shall execute, acknowledge, deliver, and record such further instruments and do such further acts as may be necessary or proper to carry out the purposes of this Deed of Trust and to subject the Collateral to the Liens and security interests created thereby, any property intended by the terms thereof to be covered thereby, including any renewals, additions, substitutions, replacements, improvements or appurtenances to the Collateral; provided, however, that any such additional instruments shall neither materially increase Trustor's obligations under this Deed of Trust nor materially decrease Trustor's rights under this Deed of Trust.

4.8     Recording and Filing. Trustor shall cause this Deed of Trust and any related financing statements and all amendments, supplements and extensions thereto and substitutions

9

therefore to be recorded, filed, re-recorded and refiled, as necessary to carry out the purposes of this Deed of Trust and the Guaranty, and shall pay all such recording, filing, re-recording and refiling fees, title insurance premiums and other charges.

4.9     <u>Payment of Debts</u>.  Trustor shall promptly pay or cause to be paid when due all of Trustor's obligations regarding the ownership and operation of the Collateral.

4.10    <u>Enforceability</u>.  This Deed of Trust constitutes a legal, valid and binding obligation of Trustor, enforceable against Trustor in accordance with its terms, except as enforceability may be limited by the effect of applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting creditors' rights generally or the application of equitable principles.

4.11    <u>No Violation; No Consents</u>.  The execution, delivery and performance of this Deed of Trust by Trustor: (a) will not violate, conflict with or constitute a breach of any of the terms or provisions of, or a default under (or an event that, with notice or the lapse of time, or both, would constitute a default), or require consent under, or result in the imposition of a Lien on any properties of any Trustor or an acceleration of indebtedness pursuant to Trustor's organizational documents, (b) will not violate, conflict with or constitute a breach of any of the terms or provisions of, or a default under (or an event that, with notice or the lapse of time, or both, would constitute a default), or require consent under, or result in the imposition of a Lien on any properties of any Trustor or an acceleration of indebtedness pursuant to any bond, debenture, note, credit agreement, mortgage, deed of trust or other agreement or instrument to which any Trustor is a party or by which it or its property is or may be bound, and (c) will not, to Trustor's actual knowledge, violate, conflict with or constitute a breach of any of the terms or provisions of, or a default under (or an event that, with notice or the lapse of time, or both, would constitute a default), or require consent under, or result in the imposition of a Lien on any properties of any Trustor or an acceleration of indebtedness pursuant to any Applicable Law.  No consent, approval, authorization or other action by, or order of, or filing, registration, qualification, license or permit of or with, any Governmental Authority is required for the execution, delivery and performance by any Trustor of this Deed of Trust.  No consents or waivers from any other person or entity are required for the execution, delivery and performance by Trustor of this Deed of Trust, other than such consents and waivers as have been obtained prior to the date hereof.

4.12    <u>Security Interest</u>.  The Collateral is owned solely by Trustor.  As of the date hereof, (a) other than Permitted Title Exceptions, there are no other Liens on the Collateral, and (b) no effective financing statement or similar instrument exists or is on file in any public office with respect to the Collateral, except for financing statements filed in connection with this Deed of Trust and the Guaranty.

4.13    <u>Disposition of Collateral</u>.  Trustor will not sell, transfer, assign, pledge, collaterally assign, exchange or otherwise dispose of the Collateral, except with the prior written consent of Beneficiary, which may be granted or withheld in Beneficiary's sole and absolute discretion.

10



## 5.    INSURANCE AND CONDEMNATION.

5.1    <u>Insurance</u>.  At Trustor's sole cost and expense, Trustor shall obtain (a) general liability insurance on an "occurrence" basis in an amount of not less than Two Million Dollars ($2,000,000) against claims for "personal injury" liability, including bodily injury, death or property damage liability, and (b) an umbrella policy in an amount not less than Five Million Dollars ($5,000,000), each for the benefit of Trustor as named insured and Beneficiary as additional insured.  Trustor also agrees to keep all Collateral insured by policies of insurance acceptable to Beneficiary providing coverage against loss by fire, earthquake, flood and/or hazard, which policy(ies) shall have extended coverage endorsements and shall be issued by company(ies) authorized to issue such policy(ies) in the State of Nevada.  Beneficiary shall be named as additional insured on all such policies and shall also receive any and all notices from the insurance company concurrent with delivery to Trustor.  Trustor shall provide certificate(s) of insurance to Beneficiary demonstrating the insurance coverage required under this Deed of Trust.  In addition, said insurance shall provide for at least thirty (30) days advance written notice to Beneficiary prior to cancellation and provide coverage in such sum or sums as shall equal the total indebtedness and other obligations secured by this Deed of Trust and all obligations having priority over this Deed of Trust, or the full replacement value of such buildings and/or improvements, whichever is less (such policies shall not contain a co-insurance provision whereby Trustor becomes a co-insurer in the event of loss).  Said insurance shall be payable to Beneficiary to the amount of the unsatisfied obligations to Beneficiary hereby secured.  The policy or policies of said insurance shall be delivered to Beneficiary, as further security, and in default hereof, Beneficiary may procure such insurance, and expend such sum or sums therefore as Beneficiary shall deem necessary.  Beneficiary may settle, compromise or adjust any insurance or other claim. Beneficiary shall have the sole right to settle, compromise or adjust any insurance or other claim in such manner as Beneficiary may determine, and for this purpose, Beneficiary may, in its own name or in the name of Trustor, take such action as Beneficiary reasonably deems appropriate.  Any amount collected by Trustor with respect to an insurance or other claim shall be delivered immediately to Beneficiary.  The amount collected by Trustor or Beneficiary under any fire or other insurance policy may be applied by Beneficiary upon the indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary, the entire amount so collected, or any part thereof, may be released to Trustor.  Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

5.2    <u>Damages; Insurance and Condemnation Proceeds</u>.

(a)    Trustor shall give Beneficiary prompt written notice of the occurrence of any casualty affecting, or the institution of any proceedings for eminent domain or for the condemnation of, the Real Property or any portion thereof.  Trustor shall proceed promptly and diligently to prosecute in good faith the settlement or compromise of any and all such claims or proceedings; *provided, however,* any such settlement or compromise shall be subject to Beneficiary's written consent, which consent may be granted or withheld in Beneficiary's sole and absolute discretion.  Beneficiary may participate in any such claims or proceedings, and Beneficiary is hereby authorized, in its own name or in Trustor's name, to adjust any loss covered by insurance or any condemnation claim or cause of action, and to settle or compromise any claim or cause of action in connection therewith, and Trustor shall from time to time deliver

11

764123.1



to Beneficiary any and all further assignments and other instruments required to permit such participation.

(b)     The following rights, claims and amounts are hereby absolutely and irrevocably assigned to and shall be paid to Beneficiary: (i) all awards of damages and all other compensation payable directly or indirectly by reason of a condemnation or proposed condemnation for public or private use affecting all or any part of, or any interest in, the Real Property; (ii) all proceeds of any insurance policies payable by reason of loss sustained to all or any part of the Real Property; and (iii) all interest which may accrue on any of the foregoing (collectively, "*Loss Proceeds*"). Trustor hereby authorizes and directs any affected insurance company and any affected governmental body responsible for such condemnation to make payment of any Loss Proceeds directly to Beneficiary alone, and not to Beneficiary and Trustor jointly. If Trustor receives any Loss Proceeds, Trustor shall promptly pay over such Loss Proceeds to Beneficiary. Trustor hereby covenants that until such Loss Proceeds are so paid over to Beneficiary, Trustor shall hold such Loss Proceeds in trust for the benefit of Beneficiary and shall not commingle such Loss Proceeds with any other funds or assets of Trustor or any other party. Beneficiary may commence, appear in, defend or prosecute any assigned right, claim or action, and may adjust, compromise, settle and collect all rights, claims, actions and awards assigned to Beneficiary.

(c)     At the absolute discretion of Beneficiary, regardless of any impairment of security or lack of impairment of security, but subject to Applicable Law governing use of Loss Proceeds, if any, Beneficiary may apply all or any of the Loss Proceeds it receives with respect to any such rights, claims or amounts to Beneficiary's expenses in settling, prosecuting or defending same and then apply the balance to the Secured Obligations, without the imposition of a prepayment charge, notwithstanding the fact that the outstanding amount thereof may not then be due and payable or that the Secured Obligations are otherwise adequately secured, in any order without suspending, extending or reducing any obligation of Trustor to make installment payments, and may release all or any part of the proceeds to Trustor upon any conditions Beneficiary chooses. Application of all or any portion of the Loss Proceeds, or the release thereof to Trustor, shall not cure or waive any Event of Default or notice of default under this Section 5.2 or invalidate any acts done pursuant to such notice.

(d)     At its sole option, and so long as Trustor is not in default under this Deed of Trust or under the Guaranty, Beneficiary may condition use of the Loss Proceeds for repair or restoration of the Real Property upon deposit with Beneficiary of the Loss Proceeds plus any additional amount which Beneficiary determines is needed to complete and fully pay all costs of the repair or restoration (including, without limitation, taxes, financing charges, insurance and rent during the repair period), upon establishment of an arrangement for lien releases and disbursement of funds acceptable to Beneficiary and in a manner and upon such terms and conditions as would be required by a prudent interim construction lender, and upon delivery to Beneficiary in form acceptable to Beneficiary of: (i) evidence that the Real Property can, in Beneficiary's judgment, with diligent restoration or repair, be returned to a condition at least equal to the condition thereof that existed prior to the casualty or partial taking causing the loss or damage within the earlier to occur of (A) three (3) months after the receipt of the Loss Proceeds by Beneficiary, and (B) the stated maturity date of the Note, (ii) evidence that all necessary governmental approvals can be timely obtained to allow the rebuilding and

12

reoccupancy of the Real Property; (iii) plans and specifications for the work; (iv) a contract for the work, signed by a contractor acceptable to Beneficiary; (v) a cost breakdown for the work; (vi) a payment and performance bond for the work; (vii) evidence that after completion of the work the income from the Real Property will be sufficient to pay all expenses and debt service for the Real Property with the same coverage ratio considered by Beneficiary in its determination to make the Guaranty secured hereby; (viii) evidence of continuation of leases required by Beneficiary; (ix) evidence that, upon completion of the work, the size, capacity and total value of the Real Property will be at least as great as it was before the damage or condemnation occurred; and (x) evidence of satisfaction of any additional conditions that Beneficiary may establish to protect its security. Beneficiary shall have the option, upon the completion of such restoration of the Real Property, to apply any surplus Loss Proceeds remaining after the completion of such restoration, at par and without the imposition of a prepayment charge, to the reduction of the Secured Obligations, notwithstanding the fact that the amount owing thereon may not then be due and payable or that said indebtedness is otherwise adequately secured. Trustor acknowledges that the specific conditions described above are reasonable.

## 6.    EVENTS OF DEFAULT.

The occurrence of any one of the following shall be a default ("*Event of Default*") hereunder:

6.1    <u>Generally</u>. The occurrence of any event of default under the Note or the Guaranty that continues beyond any applicable cure periods contained therein, if applicable. Furthermore, and for the avoidance of doubt, any Event of Default under this Deed of Trust shall also constitute and event of default under the Guaranty. Trustor acknowledges that this provision has the effect of cross-defaulting this Deed of Trust with the Note and Guaranty.

6.2    <u>Transfer of the Real Property</u>. Any transfer of any Trustor's interest with respect to all or any part of Property other than dispositions expressly permitted herein or in the Note or Guaranty shall be void and of no force or effect. Trustor acknowledges that Beneficiary has relied upon Trustor owning and operating the Property in connection with the extension of Beneficiary's financing. Accordingly, Trustor shall not directly or indirectly create, incur, assume or permit any deed of trust or encumbrance to exist upon the Real Property, or any portion thereof, whether now owned or hereafter acquired, other than this Deed of Trust. Trustor shall not, without the prior written consent of Beneficiary, which consent may be granted or withheld in Beneficiary's sole and absolute discretion, sell, transfer, mortgage, pledge, hypothecate, assign, encumber or otherwise dispose of, whether voluntarily, involuntarily or by operation of law (a "*Transfer*") of all or any part of the Real Property or the UCC Collateral, or Transfer any interest in Trustor. Consent to one such Transfer or lien shall not be deemed to be a waiver of the right to require the consent to future or successive Transfers or liens. Beneficiary shall have the right, subject to the terms and conditions of the Note and Guaranty, to grant or deny such consent in its absolute discretion. If consent should be given to a Transfer and if this Deed of Trust is not released to the extent of the Collateral transferred or subjected to a Lien by a writing signed by Beneficiary and recorded in the Official Records, then any such Transfer or lien shall be subject to this Deed of Trust and any such transferee shall assume all obligations hereunder and agree to be bound by all of the provisions contained hereunder. "*Permitted Transfer*" shall mean the Transfer of all or any part of the Real Property, or the Transfer of any

13

interest in Trustor that is consented to in writing by Beneficiary. Notwithstanding the foregoing or anything in this Deed of Trust to the contrary, however, (i) limited partnership and non-managing membership interests in or shares of Borrower or in any entity owning a direct or indirect interest in Trustor shall be freely transferable without the consent of Beneficiary so long as following such transfer, in the aggregate of all transfers of direct or indirect interests in Trustor, less than twenty-five percent (25%) of all direct or indirect interests in Trustor shall have been transferred after the date hereof and the legal, beneficial and actual control of Trustor shall remain with the persons holding such control of Trustor as of the date hereof, (ii) any involuntary transfer caused by the death of any general partner, shareholder, joint venturer, member or beneficial owner of a trust shall not be an Event of Default so long as Trustor is reconstituted, if required, following such death and so long as those persons responsible for the control and/or management of Trustor remain unchanged as a result of such death, or any replacement control and/or management is approved in writing by Beneficiary in each instance.

## 7.    REMEDIES.

7.1    Exercise of Specific Remedies. Upon the occurrence of any Event of Default, and during the continuance thereof, in addition to all other powers, rights and remedies otherwise available upon an Event of Default under the Note and Guaranty, herein or by law or at equity conferred:

(a)    Beneficiary may exercise any and all of its rights provided hereunder or under Applicable Law. Beneficiary shall, to the extent not prohibited by Applicable Law, have the right and power, but not the obligation, without the appointment of a receiver, to enter upon and take immediate possession of the RP Collateral or any part thereof, to exclude Trustor therefrom, to hold, use, operate, manage and control such RP Collateral, to make all such repairs, replacements, alterations, additions and improvements to the same as Beneficiary may deem proper, and to demand, collect and retain the Rents as provided in Article II hereof.

(b)    With respect to any or all of the RP Collateral, in lieu of or in addition to exercising any other power, right or remedy herein granted or by law or equity conferred, Beneficiary may, without notice, demand or declaration of default (except as required by Applicable Law), proceed by an action or actions in equity or at law for the appointment of a receiver pending any foreclosure hereunder or the sale of such RP Collateral or any part thereof or for the enforcement of any other appropriate equitable or legal remedy.

(c)    Beneficiary shall have all of the rights and remedies of a secured creditor granted by Applicable Law, including the Code, as more particularly provided in Article III and shall, to the extent not prohibited by Applicable Law, have the right and power, but not the obligation, to take possession of the UCC Collateral, and for that purpose Beneficiary may enter upon the Real Property on which any or all of the UCC Collateral is located and take possession of and operate such UCC Collateral or remove the same therefrom. Beneficiary may also require Trustor to assemble the UCC Collateral and make it available to Beneficiary at a place to be designated by Beneficiary which is reasonably convenient to both parties.

(d)    In response to Beneficiary's request, subject to any mandatory requirements of Applicable Law, Trustee shall have the right to sell or have sold the RP

14



Collateral or interests therein or any part thereof at one or more sales, as an entirety or in parcels, at such place or places and otherwise in such manner and upon such notice as may be required by Applicable Law or by this Deed of Trust, or, in the absence of any such requirement, as Beneficiary may deem appropriate. Trustee shall make a conveyance to the purchaser or purchasers thereof without, to the extent permitted by Applicable Law, any warranties express or implied. Subject to Applicable Law, Trustee may postpone the sale of such RP Collateral or interests therein or any part thereof by public announcement at the time and place of such sale, and from time to time thereafter may further postpone such sale by public announcement made at the time of sale fixed by the preceding postponement. Sale of a part of the RP Collateral or interests therein or any defective or irregular sale hereunder will not exhaust the power of sale, and sales may be made from time to time until all such property is sold without defect or irregularity or the Secured Obligations are paid in full. It shall not be necessary for any of the Collateral at any such sale to be physically present or constructively in the possession of Beneficiary or Trustee and Trustor shall deliver all of the Collateral to the purchaser at such sale. If it should be impossible or impracticable to take actual delivery of the Collateral, then the title and right of possession to the Collateral shall pass to the purchaser at such sale as completely as if the same had been actually present and delivered.

(e)     Beneficiary (or any successor to Beneficiary) shall have the right to become the purchaser at any sale made pursuant to the provisions of this Article VII and shall have the right to credit upon the amount of the bid made therefore the amount payable to it out of the net proceeds of such sale. All other sales shall be, to the extent permitted by Applicable Law, on a cash basis. Trustor does hereby ratify and confirm all legal acts that Beneficiary and Trustee may do in carrying out the provisions of this Deed of Trust.

(f)     Any sale of the Collateral or any part thereof pursuant to the provisions of this Article VII will operate to divest all right, title, interest, claim and demand of Trustor in and to the Real Property sold and will be a perpetual bar against Trustor, subject to Applicable Law. Any purchaser at a foreclosure sale will receive possession of the Real Property purchased at the earliest time permitted under the law of the State, and Trustor agrees that if Trustor retains possession of the Real Property or any part thereof subsequent to such sale, such Trustor will be considered a tenant at sufferance of the purchaser, and will, if such Trustor remains in possession after demand to remove, be guilty of forcible detainer and will be subject to eviction and removal, forcible or otherwise, with or without process of law, and all damages to such Trustor by reason thereof are hereby expressly waived by such Trustor, to the extent permitted by Applicable Law.

(g)     Trustor acknowledges that it is aware of and has had the advice of counsel of its choice with respect to its rights, under Applicable Law, with respect to this Deed of Trust, the Secured Obligations and the Collateral. Except to the extent expressly set forth in this Deed of Trust and the Guaranty, Trustor hereby agrees that such Trustor shall not at any time hereafter have or assert, and hereby waives to the extent permitted under Applicable Law, any right under any Applicable Law pertaining to: marshalling, whether of assets or liens, the sale of property in the inverse order of alienation, the exemption of homesteads, the administration of estates of decedents, appraisement, valuation, stay, extension, reinstatement, redemption, subrogation, or abatement, suspension, deferment, diminution or reduction of any of the Secured Obligations (including setoff), now or hereafter in force.

15

764123.1

(h)     Beneficiary, at its option, is authorized to cause foreclosure of this Deed of Trust subject to the rights of any tenants under Leases, and the failure to make any such tenants parties to any such foreclosure proceedings and to foreclose their rights will not be, nor be asserted to be by any Trustor, a defense at any proceedings instituted by Beneficiary to collect the Secured Obligations.

7.2     <u>Cost and Expenses</u>.  All out-of-pocket costs and expenses (including reasonable attorneys' fees and legal expenses, title premiums, title report and work charges, filing fees, and mortgage, mortgage registration, transfer, stamp and other excise taxes) incurred by Beneficiary in perfecting, protecting or enforcing its rights hereunder or in response to any request for consent or other request by Trustor hereunder, whether or not an Event of Default shall have occurred, shall be a demand obligation of Trustor to Beneficiary, and shall bear interest if unpaid commencing on the date of demand (except if an Event of Default exists and is continuing in which case interest shall begin to accrue immediately upon the incurrence of such cost or expense) at the highest rate then applicable under the Note with respect to the Secured Obligations, all of which shall be part of the Secured Obligations.

7.3     <u>Application of Proceeds</u>.  Subject to Applicable Law, the proceeds of any sale of the Collateral or any part thereof made pursuant to this Article VII shall be applied in  as provided below, in such order or proportion as the Beneficiary, in its sole discretion, may determine.

(a)     First, to pay the portion of the Secured Obligations attributable to the expenses of sale, costs of any action and any other sums for which Trustor is obligated to reimburse Beneficiary under of this Deed of Trust;

(b)     Second, to pay the portion of the Secured Obligations attributable to any sums expended or advanced by Beneficiary under the terms of this Deed of Trust which then remain unpaid;

(c)     Third, to pay all other Secured Obligations in any order and proportions as Beneficiary in its sole discretion may choose; and

(d)     Fourth, to remit the remainder, if any, to the person or persons entitled to it.

7.4     <u>Performance of Defaulted Acts</u>.  From and after the occurrence and during the continuance of an Event of Default, Beneficiary may, but need not, make any payment or perform any act herein required of any Trustor in any form and manner deemed expedient, including making full or partial payments of principal or interest on prior encumbrances, if any, making rental payments and purchasing, discharging, compromising or settling any tax Lien or other prior Lien or title or claim thereof, or redeeming from any tax sale or forfeiture affecting the Collateral or contesting any tax or assessment.  All moneys paid for any of the purposes herein authorized and all expenses paid or incurred in connection therewith, including attorneys' fees, shall be included among the Secured Obligations and shall be due and payable upon demand and with interest thereon from the date of such payment or expense at the rate of interest payable after default under the terms of Note.  Inaction of Beneficiary shall never be considered

16

as a waiver of any right accruing to it hereunder on account of any default on the part of Trustor. Beneficiary, making any payment hereby authorized relating to taxes or assessments, may do so according to any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of such bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax Lien or title or claim thereof.

## 8.    TRUSTEE.

8.1    Successor Trustee. Trustee may resign in a writing addressed to Beneficiary or be removed at any time with or without cause by an instrument in writing duly executed by Beneficiary. In case of the death, resignation or removal of Trustee, a successor Trustee may be appointed by Beneficiary without formality other than an appointment and designation in writing recorded in the Official Records unless otherwise required by Applicable Law. Such appointment and designation will be full evidence of the right and authority to make the same and of all facts therein recited, and upon the making of any such appointment and designation, said successor will thereupon succeed to all the rights, powers, privileges, immunities and duties hereby conferred upon Trustee. All references herein to Trustee will be deemed to refer to the trustee from time to time acting hereunder.

8.2    Trustee's Powers. At any time, or from time to time without liability therefore and without notice, upon written request of Beneficiary and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Collateral, Trustee may reconvey any part of the Collateral.

8.3    Reconveyance by Trustee. To the extent Trustee's signature is necessary on any full reconveyance of this Deed of Trust then, upon written request of Beneficiary stating that all sums secured hereby have been paid and upon payment by Trustor of Trustee's fees, Trustee shall reconvey to each applicable Trustor, or to the person or persons legally entitled thereto, without warranty, any portion of the RP Collateral then held hereunder. The grantee in any reconveyance may be described as "the person or persons legally entitled thereto."

## 9.    GENERAL PROVISIONS.

9.1    Trustor. This Deed of Trust and all provisions hereof shall extend to and be binding upon Trustor and all persons claiming under or through any Trustor. Whenever in this Deed of Trust there is reference made to any of the parties hereto, such reference shall be deemed to include, wherever applicable, a reference to the members, managers, heirs, executors and administrators or successors and assigns (as the case may be) of such party. Trustor's successors and assigns shall include a receiver, trustee or debtor-in-possession of or for such Trustor.

9.2    Cumulative Rights Waiver; Modifications. Each and every right, power and remedy hereby granted to Beneficiary shall be cumulative and not exclusive, and each and every right, power and remedy, whether specifically hereby granted or otherwise existing, may be exercised from time to time and as often and in such order as may be deemed expedient by Beneficiary and the exercise of any such right, power or remedy will not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. No delay

17

or omission by Beneficiary in the exercise of any right, power or remedy will impair any such right, power or remedy or operate as a waiver thereof or of any other right, power or remedy then or thereafter existing. Any and all covenants of Trustor in this Deed of Trust may from time to time, by instrument in writing signed by Beneficiary, be waived to such extent and in such manner as Beneficiary may desire, but no such waiver will ever affect or impair the rights of Beneficiary hereunder, except to the extent specifically stated in such written instrument. All changes to and modifications of this Deed of Trust must be in writing and signed by Trustor and Beneficiary.

      9.3    <u>Additional Documents</u>. Trustor agrees that upon request of Beneficiary it will from time to time execute, acknowledge and deliver all such additional instruments and will do or cause to be done all such further acts and things as may be reasonably necessary fully to effectuate the intent of this Deed of Trust; provided, however, that such additional instruments shall neither materially increase Trustor's obligations under this Deed of Trust nor materially diminish Trustor's rights under this Deed of Trust.

      9.4    <u>Notices</u>. All notices, requests and demands to be made hereunder to the parties hereto shall be in writing (at the address set forth below) by any of the following means: (a) personal service (including service by overnight courier service); (b) confirmed fax; or (c) registered or certified, first class mail, return receipt requested. Such addresses may be changed by notice to the other parties given in the same manner as provided above. Any notice, demand or request sent pursuant to either <u>subsection (a) or (b)</u> hereof shall be deemed received upon such personal service or upon confirmation of fax delivery, and, if sent pursuant to <u>subsection (c)</u> shall be deemed received five (5) days following deposit in the mail:

          **If to Trustor:**
          Grand Central South Partners, LLC
          c/o The Merrill Group of Companies, LLC
          22817 Ventura Blvd., Suite 310
          Woodland Hills, CA 91364
          Facsimile: (818) 887-6660

          With a copy to:

          Craig Katchen
          Pierce Development, Inc.
          7881 Dana Point Court
          Las Vegas, NV 89117
          Facsimile: (702) 221-4834

          And:

          Christopher S. Reeder, Esq.
          Robins Kaplan Miller & Ciresi LLP
          2049 Century Park East, Suite 3400
          Los Angeles, CA 90067
          Facsimile: (310) 229-5800

18

764123.1



**If to Beneficiary:**
Grand Central South Property Holdings, LLC
360 North Crescent Drive, South Building
Beverly Hills, CA  90210
Attention:  Mary Ann Sigler
Facsimile:  (310) 712-1848

**If to Title Company:**
First American Title Insurance Company
777 South Figueroa Street, Suite 400
Los Angeles, CA  90017
Attention:  Frank Bryant
Facsimile:  (877) 398-1598

9.5     Applicable Law.  Without regard to principles of conflicts of law, this Deed of Trust shall be construed under and governed by the laws of the State of Nevada.

9.6     Consent to Jurisdiction and Service of Process.

(a)     Submission to Jurisdiction.  Trustor hereby irrevocably submits to the jurisdiction of the United States District Court for the District of Nevada or any court of the State of Nevada located in Clark County in any action, suit or proceeding arising out of or relating to this Deed of Trust, and Trustor hereby irrevocably agrees that all claims in respect of such action or proceeding may be heard and determined in such court.  Trustor agrees that a final judgment in any such action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Applicable Law.

(b)     Waiver of Venue.  Trustor irrevocably and unconditionally waives, to the fullest extent permitted by Applicable Law, any objection which it may now or hereafter have to the laying of venue of any action or proceeding arising out of or relating to this Deed of Trust or the Guaranty in any court referred to in Section 9.6(a).  Trustor hereby irrevocably waives, to the fullest extent permitted by Applicable Law, the defense of an inconvenient forum to the maintenance of such action or proceeding in any such court.

(c)     Waiver of Jury Trial.  TRUSTOR HEREBY WAIVES ITS RIGHT TO TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH TRUSTOR AND/OR BENEFICIARY MAY BE PARTIES, ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO THE NOTE, THE GUARANTY, THIS DEED OF TRUST OR ANY OTHER DOCUMENT EVIDENCING, SECURING OR OTHERWISE RELATED TO THE NOTE, THE GUARANTY OR THIS DEED OF TRUST.  IT IS AGREED AND UNDERSTOOD THAT THIS WAIVER CONSTITUTES A WAIVER OF TRIAL BY JURY OF ALL PARTIES TO SUCH ACTION OR PROCEEDING.  THIS WAIVER IS KNOWINGLY, WILLING AND VOLUNTARILY MADE BY TRUSTOR AND TRUSTOR

19

HEREBY REPRESENTS THAT NO REPRESENTATIONS OF FACTS OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFORT.  TRUSTOR FURTHER REPRESENTS AND WARRANTS THAT IT HAS BEEN REPRESENTED IN SIGNING THE GUARANTY AND THIS DEED OF TRUST AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY, TO DISCUSS THIS WAIVER WITH COUNSEL.

9.7     Time of Essence.  Time is of the essence of this Deed of Trust and of every part hereof of which time is an element.

9.8     Severability.  If any provision hereof or of any of the other documents constituting, evidencing or creating all or any part of the Secured Obligations is invalid or unenforceable in any jurisdiction, the other provisions hereof or of said documents shall remain in full force and effect in such jurisdiction.  The invalidity of any provision of this Deed of Trust in any jurisdiction will not affect the validity or enforceability of any such provision in any other jurisdiction.  If any Lien, encumbrance or security interest evidenced or created by this Deed of Trust is invalid or unenforceable, in whole or in part, as to any part of the Secured Obligations, or is invalid or unenforceable, in whole or in part, as to any part of the Collateral, such portion, if any, of the Secured Obligations as is not secured by all of the Collateral hereunder shall be paid prior to the payment of the portion of the Secured Obligations secured by all of the Collateral, and all payments made on the Secured Obligations (including cash and/or property received in connection with sales of Collateral pursuant to Article VII hereof) shall, unless prohibited by Applicable Law or unless Beneficiary, in its sole and absolute discretion, otherwise elects, be deemed and considered to have been first paid on and applied to payment in full of the unsecured or partially secured portion of the Secured Obligations, and the remainder to the secured portion of the Secured Obligations.

9.9     Financing Statement.  A carbon, photographic or other reproduction of this Deed of Trust or any financing statement in connection herewith shall be sufficient as a financing statement for any and all purposes to the fullest extent permitted under Applicable Law.

9.10     Captions.  The captions or headings at the beginning of Articles and Sections hereof are for the convenience of the parties and are not part of this Deed of Trust.

9.11     Attorneys' Fees.  In connection with any enforcement of its rights under this Deed of Trust (and in addition to all rights for fees and costs provided for under the Guaranty), Trustor promises to pay all costs of enforcement and collection, including reasonable attorneys' fees, whether or not such enforcement and collection includes the filing of a lawsuit.

9.12     Relationship of Parties.  The relationship between Trustor and Beneficiary with respect to the Guaranty and this Deed of Trust is that of guarantor and lender only and neither Trustor, on the one hand, nor Beneficiary, on the other hand, is, nor shall it hold itself out to be, the agent, employee, joint venturer or partner of the other with respect for the Guaranty and this Deed of Trust.

20



9.13   <u>Interpretation</u>.  All references herein to articles, sections, exhibits and schedules shall be deemed to be references to articles and sections of, and exhibits and schedules to, this Deed of Trust unless the context shall otherwise require.  All exhibits and schedules attached hereto shall be deemed incorporated herein as if set forth in full herein.  The words "include," "includes" and "including" shall be deemed to be followed by the phrase "without limitation." The words "hereof," "herein" and "hereunder" and words of similar import when used in this Deed of Trust shall refer to this Deed of Trust as a whole and not to any particular provisions of this Deed of Trust.

9.14   <u>Effect of NRS 107.030</u>.  The following covenants, Nos. (6), (7) (reasonable) and (8) of NRS 107.030, are hereby adopted and made a part of this Deed of Trust.  In addition, to the extent not inconsistent herewith, the following covenants, Nos. (1), (3), (4) (with interest at the default rate provided for under the Note), (5) and (9) of NRS 107.030, are hereby adopted and made a part of this Deed of Trust.

9.15   <u>Uniform Assignment of Rents Act</u>.  This Deed of Trust is subject to the Uniform Assignment of Rents Act, Nevada Revised Statutes, Chapter 107A.

9.16   <u>Construction</u>. The language in all parts of this Deed of Trust shall in all cases be construed simply, according to its fair meaning, and not strictly for or against any of the parties. Each of the parties acknowledges he or it has had the opportunity to negotiate modifications to the language of this Deed of Trust.  Accordingly, each party agrees that, in any dispute regarding the interpretation or construction of this Agreement, no presumption shall operate in favor of or against any party hereto by virtue of his or its role in drafting or not drafting the terms and conditions set forth herein.

9.17   <u>Advice of Counsel</u>. Each of the parties acknowledges that he or it has been represented by independent counsel of his or its choice with respect to all of the negotiations preceding the execution and delivery of this Deed of Trust, and that he or it has executed this Deed of Trust after receiving advice of counsel.

*[Remainder of page intentionally left blank. Signature pages on next page.]*



21

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

**TRUSTOR:**

**GRAND CENTRAL SOUTH PARTNERS, LLC,**
a Nevada limited liability company

By:    Grand Central Holdings, LLC
        a Nevada limited liability company
Its:    Manager

        By:    Pierce Development, Inc.,
               a Nevada corporation
        Its:    Co-Manager

        By:_____
        Name:_____
        Title:_____

        By:    The Merrill Group of Companies, LLC,
               a California limited liability company
        Its:    Co-Manager

        By:_____
        Name:_____
        Title:_____

22

*Nevada*

STATE OF ~~CALIFORNIA~~ )
                                        ) SS.
COUNTY OF *Clark* )

On *August 20th*, 2012, before me, *Elsa Golla*, a
Notary Public, personally appeared *CRAIG MITCHEL KATCHEN* who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

*Nevada*

I certify under PENALTY OF PERJURY under the laws of the State of ~~California~~ that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

*Elsa Golla*
*Exp 11-18-14*
*No. 11-3887-1*

NOTARY PUBLIC
STATE OF NEVADA
County of Clark
ELSA GOLLA
My Appointment Expires NOV. 18, 2014
No: 11-3887-1

STATE OF CALIFORNIA )
                                        ) SS.
COUNTY OF _____ )

On _____, 2012, before me, _____, a
Notary Public, personally appeared _____, who
proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same
in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that
the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

23

764123.1

IN WITNESS WHEREOF, Trustor has executed this instrument the day and year first above written.

**TRUSTOR:**

**GRAND CENTRAL SOUTH PARTNERS, LLC,**
a Nevada limited liability company

By:   Grand Central Holdings, LLC
      a Nevada limited liability company
Its:   Manager

**SIGNED IN COUNTERPART**

          By:   Pierce Development, Inc.,
                a Nevada corporation
          Its:   Co-Manager

          By:_____
          Name:_____
          Title:_____

          By:   The Merrill Group of Companies, LLC,
                a California limited liability company
          Its:   Co-Manager

          By:_____
          Name:_____
          Title:_____

22

STATE OF CALIFORNIA               )
                                  ) SS.
COUNTY OF _Los Angeles_           )

    On _July 3_, 2012, before me, _TINA M LAABS_, a Notary Public, personally appeared _DAVID FRANK_, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

Signature _____ (Seal)

> T. M. LAABS
> Commission No. 1962788
> NOTARY PUBLIC-CALIFORNIA
> LOS ANGELES COUNTY
> My Comm. Expires DECEMBER 5, 2015

STATE OF CALIFORNIA               )      T.m Labbs
                                  ) SS.  NO  1962788
COUNTY OF _____         )      exp 12-5-15

    On _____, 2012, before me, _____, a Notary Public, personally appeared _____, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

    I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

    WITNESS my hand and official seal.

Signature _____ (Seal)

23

764123.1

## SCHEDULE 1

### DEFINED TERMS

"*Applicable Law*" means, collectively, all international, foreign, United States federal and state and local statutes, treaties, rules, guidelines, regulations, ordinances, codes and administrative or judicial precedents or authorities, including the interpretation or administration thereof by any Governmental Authority charged with the enforcement, interpretation or administration thereof, and all applicable administrative orders, directed duties, requests, licenses, authorizations and permits of, and agreements with, any Governmental Authority.

"*Governmental Authority*" means the government of the United States of America or any other nation, or of any political subdivision thereof, whether state or local, and any agency, authority, instrumentality, regulatory body, court, central bank or other entity exercising executive, legislative, judicial, taxing, regulatory or administrative powers or functions of or pertaining to government.

"*Lien*" means any lien, mortgage, pledge, assignment, hypothecation, security interest, fixed or floating charge, tenancy or other occupancy right or encumbrance of any kind (including any conditional sale or other title retention agreement, any Lease in the nature thereof, and any agreement to give any security interest) and any option, trust or deposit or other preferential arrangement having the practical effect of any of the foregoing.

"*Official Records*" means the Official Records of Clark County, Nevada.

"*Permitted Title Exceptions*" means the encumbrances and other Liens on the RP Collateral reflected in the ALTA extended coverage Lender's Policy of Title Insurance required to be delivered in accordance with Section 4.7(a) herein.

# EXHIBIT A

## REAL PROPERTY LEGAL DESCRIPTION

(attached)

# EXHIBIT 'A'

A PORTION OF LOT SEVEN (7) OF PARKWAY CENTER, AS SHOWN BY MAP THEREOF ON FILE IN BOOK 53, OF PLATS, PAGE 61, IN THE OFFICE OF THE COUNTY RECORDER OF CLARK COUNTY, NEVADA, LYING WITHIN THE SOUTH HALF (S ½) OF THE SOUTHEAST QUARTER (SE ¼) OF SECTION 33, TOWNSHIP 20 SOUTH, RANGE 61 EAST, M.D.M., BEING DESCRIBED AS FOLLOWS:

COMMENCING AT THE MOST NORTHERLY CORNER OF SAID LOT 7 ON THE EASTERLY RIGHT-OF-WAY LINE OF GRAND CENTRAL PARKWAY (VARYING WIDTH); THENCE ALONG THE SOUTHWESTERLY LINE OF LOT 6 OF SAID "PARKWAY CENTER", SOUTH 62°04'44" EAST, 352.00 FEET TO THE POINT OF BEGINNING; THENCE SOUTH 27°55'16" WEST, 275.81 FEET TO A POINT ON THE EASTERLY LINE OF AN EASEMENT TO THE CITY OF LAS VEGAS DESCRIBED BY DOCUMENT RECORDED MAY 13, 1996 IN BOOK 960513 OF OFFICIAL RECORDS AS INSTRUMENT NO. 01711 IN THE CLARK COUNTY RECORDER'S OFFICE, CLARK COUNTY, NEVADA; THENCE ALONG SAID EASTERLY LINE THE FOLLOWING FOUR (4) COURSES; FROM A TANGENT BEARING SOUTH 27°55'16" WEST, CURVING TO THE RIGHT ALONG THE ARC OF A 210.50 FOOT RADIUS CURVE, CONCAVE WESTERLY, THROUGH A CENTRAL ANGLE OF 26°22'49", AN ARC LENGTH OF 96.92 FEET TO A POINT OF REVERSE CURVATURE THROUGH WHICH A RADIAL LINE BEARS SOUTH 35°41'55" EAST; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 25.00 FOOT RADIUS CURVE, CONCAVE EASTERLY, THROUGH A CENTRAL ANGLE OF 76°29'39", AN ARC LENGTH OF 33.38 FEET; THENCE SOUTH 22°11'34" EAST, 7.39 FEET; THENCE CURVING TO THE LEFT ALONG THE ARC OF A 25.00 FOOT RADIUS CURVE, CONCAVE NORTHEASTERLY, THROUGH A CENTRAL ANGLE OF 38°12'48", AN ARC LENGTH OF 16.67 FEET TO A POINT ON THE NORTHEASTERLY RIGHT-OF-WAY LINE OF IRON HORSE COURT (VARYING WIDTH); THENCE ALONG SAID RIGHT-OF-WAY LINE, FROM A TANGENT BEARING SOUTH 60°23'35" EAST, CURVING TO THE RIGHT ALONG THE ARC OF A 45.00 FOOT RADIUS CURVE, CONCAVE SOUTHWESTERLY, THROUGH A CENTRAL ANGLE OF 60°41'24", AN ARC LENGTH OF 47.67 FEET TO A POINT ON THE NORTHERLY LINE OF LOT 8 OF SAID "PARKWAY CENTER" TO WHICH RADIAL LINE BEARS SOUTH 89°42'11" EAST; THENCE ALONG SAID NORTHERLY LINE, SOUTH 89°42'11" EAST, 399.57 FEET TO A POINT ON THE NORTHEASTERLY LINE OF THE UNION PACIFIC RAILROAD RIGHT-OF-WAY; THENCE ALONG SAID RIGHT-OF-WAY LINE, NORTH 27°55'16" EAST, 249.02 FEET TO A POINT ON THE SOUTHWESTERLY LINE OF SAID LOT 6; THENCE ALONG SAID SOUTHWESTERLY LINE, NORTH 62°04'44" WEST, 397.99 FEET TO THE POINT OF BEGINNING.

SAID LAND IS ALSO SHOWN ON A RECORD OF SURVEY FILED IN FILE 139, PAGE 82 OF SURVEYS, RECORDED JULY 30, 2004 IN BOOK 20040730 DOCUMENT NO. 730 OF OFFICIAL RECORDS.

**NOTE: THE ABOVE METES AND BOUNDS LEGAL DESCRIPTION APPEARED PREVIOUSLY IN THAT CERTAIN GRANT, BARGAIN AND SALE DEED RECORDED JANUARY 3, 2008 IN BOOK 20080103 AS INSTRUMENT NO. 00911.**

**A.P.N.**

# Exhibit 2

# Exhibit 2

C (23)



20080103-0000912

Fee: $36.00
N/C Fee: $25.00

01/03/2008          09:45:04
T20080000936
Requestor:
CHICAGO TITLE

Debbie Conway          DBX
Clark County Recorder  Pgs: 23

(The undersigned certifies that this document does not include any social security numbers.)

**Assessor's Parcel Numbers:**          **139-33-810-006**

**Recording Requested by and
When Recorded Mail to:**

COMMUNITY BANK OF NEVADA
8945 West Russell Road, Suite #300
Las Vegas, Nevada 89148
Attention:     Commercial Real Estate

**Mail all real property tax notices to:**

GRAND CENTRAL SOUTH PARTNERS, LLC
3275 S. Jones Boulevard, Suite 103
Las Vegas, NV 89146
Attention:     Manager
07019360-TL

## DEED OF TRUST AND SECURITY AGREEMENT WITH ASSIGNMENT OF RENTS AND FIXTURE FILING

NOTE TO COUNTY RECORDER: THIS INSTRUMENT IS TO BE RECORDED AND · INDEXED AS A FIXTURE FILING AS WELL AS A DEED OF TRUST FOR PURPOSES OF THE NEVADA UNIFORM COMMERCIAL CODE.

This DEED OF TRUST AND SECURITY AGREEMENT WITH ASSIGNMENT OF RENTS AND FIXTURE FILING (**"Deed of Trust"**) is made and effective as of December 26, 2007, between GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited-liability company (**""Trustor"**), the address of which is set forth above, CHICAGO TITLE AGENCY OF NEVADA, INC., as Trustee (**"Trustee"**), and COMMUNITY BANK OF NEVADA, as Beneficiary (**"Beneficiary"**).

### WITNESSETH:

That Trustor grants all of its present and future right title and interest in and to the following described real property (**"Real Property"**), which is situated in the County of Clark, State of Nevada, to Trustee in trust, with power of sale for the benefit of Beneficiary, to have and to hold upon the trusts, covenants and agreements hereinafter set forth:

See Exhibit "A" attached hereto and incorporated by this reference.



TOGETHER WITH: All of Trustor's rights, title and interest in and to each of the following relating to the Real Property:

Buildings, structures and improvements, and building materials, fixtures and equipment to be incorporated into any buildings, structures or improvements;

Goods, materials, supplies, fixtures, equipment, machinery, furniture and furnishings, including without limitation, all such items used for (i) generation, storage or transmission of air, water, heat, steam, electricity, light, fuel, refrigeration or sound; (ii) ventilation, air-conditioning, heating, refrigeration, fire prevention and protection, sanitation, drainage, cleaning, transportation, communications, maintenance or recreation; (iii) removal of dust, refuse, garbage or snow; (iv) transmission, storage, processing or retrieval of information; and (v) floor, wall, ceiling and window coverings and decorations;

Income, receipts, revenues, rents, issues and profits, including without limitation, room rents, minimum rents, additional rents, percentage rents, occupancy and user fees and charges, license fees, parking and maintenance charges and fees, tax and insurance contributions, proceeds of the sale of utilities and services, cancellation premiums, and claims for damages arising from the breach of any leases;

Water and water rights, ditches and ditch rights, reservoirs and reservoir rights, stock or interest in irrigation or ditch companies, minerals, oil and gas rights, royalties, and lease or leasehold interests;

Plans and specifications prepared for the construction of any improvements, including without limitation, all studies, estimates, data, and drawings;

Documents, instruments and agreements relating to, or in any way connected with, the operation, control or development of the Real Property, including without limitation, any declaration of covenants, conditions and restrictions and any articles of incorporation, bylaws and other membership documents of any property owners association or similar group;

Claims and causes of action, legal and equitable, in any form whether arising in contract or in tort, and awards, payments and proceeds due or to become due, including without limitation those arising on account of any loss of, damage to, taking of, or diminution in value of, all or any part of the Real Property or any personal property described herein;

Sales agreements, escrow agreements, deposit receipts, and other documents and agreements for the sale or other disposition of all or any part of the Real Property or any of the personal property described herein, and deposits, proceeds and benefits arising from the sale or other disposition of all or any part of the Real Property or any of the personal property described herein;

2

Policies or certificates of insurance, contracts, agreements or rights of indemnification, guaranty or surety, and awards, loss payments, proceeds, and premium refunds that may be payable with respect to such policies, certificates, contracts, agreements or rights;

Contracts, agreements, permits, licenses, authorizations and certificates, including without limitation all architectural contracts, construction contracts, management contracts, service contracts, maintenance contracts, franchise agreements, license agreements, building permits and operating licenses;

Trade names, trademarks, and service marks (subject to any franchise or license agreements relating thereto);

Refunds and deposits due or to become due from any utility companies or governmental agencies;

All of Trustor's right, title and interest in and to common elements, development rights, and special declarant rights created pursuant to any condominium declaration recorded against the Property in accordance with applicable law;

Replacements and substitutions for, modifications of, and supplements, accessions, addenda and additions to, all of the personal property described herein;

Books, records, correspondence, files and electronic media, and all information stored therein;

together with all products and proceeds of all of the foregoing, in any form, including all proceeds received, due or to become due from any sale, exchange or other disposition thereof, whether such proceeds are cash or non-cash in nature, and whether represented by checks, drafts, notes or other instruments for the payment of money.

The real property together with the rights and interests of Trustor described hereinabove shall hereinafter collectively be referred to as the **"Property"**.

### FOR THE PURPOSE OF SECURING:

A.     Payment of the principal sum of SEVEN MILLION SEVEN HUNDRED EIGHTY SIX THOUSAND AND NO/100 DOLLARS ($7,786,000.00), or so much thereof as shall be advanced to Trustor, together with interest thereon, according to the terms of a promissory note, of even date herewith, made by Trustor payable to the order of the Beneficiary, according to the tenor and effect of said promissory note and all renewals, extensions, modifications, amendments and substitutions of, or for, said promissory note or notes (**"Note."**)

B.     The expenses and costs reasonably incurred or paid by Beneficiary in the preservation and enforcement of the rights and remedies of Beneficiary and the duties and

3

liabilities of Trustor hereunder, including, but not by way of limitation, reasonable attorneys' fees, court costs, witness fees, expert witness fees, collection costs, and costs and expenses paid by Beneficiary in performing for Trustor's account any obligation of said Trustor under this instrument or under any obligation secured hereby.

C.      Payment of additional sums and interest thereon which may hereafter be loaned to Trustor when evidenced by a promissory note or notes which recite that the same is secured by this Deed of Trust.

D.      Notwithstanding anything herein to the contrary, this Deed of Trust will not secure any obligations under that certain Environmental Indemnity of even date herewith executed by Trustor in favor of Beneficiary, and Trustor's obligations thereunder will survive any foreclosure, trustee's sale or any other similar proceeding hereunder.

E.      Performance of each and every term, provision, covenant and condition contained in any loan agreement, credit agreement or any other document or instrument executed by Trustor in favor of Beneficiary relating to the loan evidenced by the Note hereby secured (the Note together with any such agreement, document or instrument shall hereinafter collectively be referred to as the **"Loan Documents"**).

### AND IT IS FURTHER PROVIDED THAT:

1.      **Compliance with Laws.** Trustor shall not commit, or knowingly suffer or permit any act to be done, or condition to exist, on the Property which violates or is prohibited by any law, statute, code, act, ordinance, order, judgment, decree, injunction, rule, regulation, permit, license, authorization, direction or requirement of any government or subdivision thereof, whether it be federal, state, county or municipal, which is applicable to the Property, or any part thereof, now or at any time hereafter, (including, without limitation, the Americans with Disabilities Act (42 U.S.C. § 12101-12213 and 47 U.S.C. § 225 and 611). The requirements set forth by this section 1 are hereinafter collectively referred to as the **"Legal Requirements"**.

2.      **Repair and Maintenance.** Trustor agrees to properly care for and keep the Property in first class condition, order and repair; to care for, protect and repair all buildings and improvements situate thereon; not to remove, materially alter, or demolish any buildings or other improvements situate thereon; not to remove, materially alter or demolish any buildings or improvements damaged or destroyed thereon; to complete in a good workmanlike manner any building or other improvement which may be constructed thereon; and to pay, when due, all claims for labor performed and for materials furnished therefor; and otherwise to protect and preserve the same; to comply with all Legal Requirements having application to any alterations or improvements made thereon; not to commit or permit any waste or deterioration of said buildings and improvements or of said Property, and to comply with the Clean Air Act, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, the Resource Conservation Act of 1976, as amended, and the Hazardous Materials Transportation Act, as amended, the Resource Conservation and Recovery Act, as amended, or any other Legal Requirement related to hazardous substances; and to do any other act or acts all

4

in a timely and proper manner, which, from the character or use of the Property may be reasonably necessary to maintain the Property in a first-class condition, the specific enumerations herein not excluding the general (including, without limitation, the establishment of an equipment replacement reserve, in such amount as may be required by Beneficiary, for all equipment that is part of the Property).

3.     **Environmental Compliance.**

(a)     As used herein, the term **"Hazardous Substances"** shall mean any or all of the following: (i) any and all hazardous substances, hazardous materials, toxic substances or solid waste as defined in the Clean Air Act, the Comprehensive Environmental Response, Compensation and Liability Act of 1980, as amended, the Resource Conservation Act of 1976, as amended, and the Hazardous Materials Transportation Act, as amended, the Resource Conservation and Recovery Act, as amended, or any other Legal Requirement related to hazardous substances and the regulations promulgated thereunder, (ii) any substance or materials listed as hazardous or toxic in the United States Department of Transportation Table, by the Environmental Protection Agency or any successor agency or under any Federal, state or local laws or regulations, (iii) any asbestos, poly-chlorinated biphenyls, urea formaldehyde foam, explosives or radioactive waste, or (iv) any other chemical, material or substance which is not classified as hazardous or toxic but exposure to which is prohibited, limited or regulated by any Federal, state, local or other governmental authority having jurisdiction over the Property.

(b)     Trustor shall comply with any and all Legal Requirements regarding the presence or removal of Hazardous Substances on the Property, shall pay or cause to be paid immediately, when due, the costs of removal from the Property of any such Hazardous Substances which are required to be removed pursuant to any Legal Requirement and shall keep the Property free of any lien which may arise pursuant to such Legal Requirements. The Trustor shall not, and shall not permit any person or entity to release, discharge, or dispose of any Hazardous Substances on the Property except in compliance with all Legal Requirements and, if the same shall exist, Trustor shall immediately remove or cause to be removed from the Property such Hazardous Substances to the extent required to be removed pursuant to any Legal Requirement.

4.     **Taxes.**

(a)     Trustor agrees to pay prior to delinquency (i) all taxes and assessments, of any kind or nature, which are assessed against or affect the Property or any part thereof (**"Impositions"**) and (ii) all obligations which are represented, evidenced or secured by liens, encumbrances, charges and/or claims on said Property, or any part thereof, which appear to have priority over the lien of this Deed of Trust (**"Senior Encumbrances"**).

(b)     In the event that Trustor fails to make any payment required by section 4(a) above, within the time periods required therein, then on ten (10) days prior notice to Trustor, Beneficiary may pay the same without further demand or notice (in which case Beneficiary shall be the sole judge of the legality, validity and/or priority of the obligation so paid and of the amount required to be paid).

5

5.      **Appraisals.** Following the occurrence and during the continuance of an Event of Default, the Trustor hereby agrees to provide Beneficiary, at Beneficiary's sole option, and at Trustor's expense, and within sixty (60) days of Beneficiary's request therefor but not more frequently than once in any twelve (12) month period, an appraisal of the Property which: (i) is in a form and substance acceptable to Beneficiary in the sole and absolute exercise of its discretion; and (ii) is completed by an appraiser acceptable to Beneficiary in the sole and absolute exercise of its discretion. The Trustor hereby agrees that Beneficiary may enter onto the Property upon ten (10) days written notice to Trustor to perform its own appraisal of the Property and that Beneficiary will have access to all buildings and/or improvements on the Property so that it can complete that appraisal.

6.      **Insurance.** Trustor agrees to keep all buildings and/or improvements, which are ever located on the Property, if any, and all of the Property, including any personal property that is part of the Property, insured by policies of general liability insurance and insurance providing coverage against loss by fire and/or hazard, and/or flood, which policy(ies) shall have extended coverage endorsements, shall include business interruption provisions, and shall be issued by company(ies) authorized to issue such policy(ies) in the State of Nevada.  The terms and amounts of all such policies, (not exceeding the replacement cost of such items) and the insurance companies that issue such polices, must be approved by Beneficiary which approval shall not be unreasonably conditioned, delayed or withheld.  Said insurance shall provide for at least thirty (30) days advance written notice to Beneficiary prior to cancellation.  Said insurance shall, at Beneficiary's sole option, be payable to Beneficiary to the amount of the unsatisfied obligations to Beneficiary hereby secured or include such riders or mortgagee's endorsements as Beneficiary may require.  The policy or policies of said insurance shall be delivered to and held by Beneficiary, as further security for the payment of the Note and other moneys due hereunder. Upon Trustor's default hereof, Beneficiary may procure such insurance, and expend such sum or sums therefor as Beneficiary shall deem necessary.  Subject to the terms of the other Loan Documents, so long as no Event of Default (as defined in section 14 below) has occurred and is continuing, Trustor may settle, compromise or adjust or apply any insurance or other claim without the Beneficiary's prior written consent so long as the amount of the claim (but not the settlement or compromise thereof) is less than $50,000.00. So long as no Event of Default has occurred or is continuing, Beneficiary shall apply all insurance proceeds to the repair and or restoration of the Property upon the satisfaction of the following conditions: i) Trustor shall have delivered written notice to Beneficiary of its intention to commence repairs and restoration within ten (10) business days following the settlement of any claim or claims under any insurance policies relating to the Property; ii) all insurance proceeds are deposited with Beneficiary; iii) within ten (10) business days following the deposit of such insurance proceeds with Beneficiary, Trustor shall have deposited with Beneficiary the amount necessary, if any, to pay the difference between the cost of restoration or repair of the Property and the amount of such insurance proceeds; iv) Trustor shall have delivered to Beneficiary a budget of all costs of reconstruction, repair and or restoration for the Property, acceptable to Beneficiary in the reasonable exercise of its discretion; and v) Beneficiary and all applicable governmental agencies shall have approved the final plans and specifications for the reconstruction, repair or restoration of the Property.  Subject to conditions set forth in the foregoing sentence, Beneficiary shall

6

disburse such insurance proceeds as necessary to pay for the reconstruction, repair or restoration of the Property. Upon the occurrence of an Event of Default: Beneficiary shall have the sole right to settle, compromise or adjust any insurance or other claim in such manner as Beneficiary may determine, and for this purpose, Beneficiary may, in its own name or in the name of Trustor, take such action as Beneficiary deems appropriate; any amount collected by Trustor with respect to an insurance or other claim shall be delivered immediately to Beneficiary; the amount collected by Trustor or Beneficiary under any fire or other insurance policy may be applied by Beneficiary upon the indebtedness secured hereby and in such order as Beneficiary may determine, or at the option of Beneficiary, the entire amount so collected, or any part thereof, may be released to Trustor upon such conditions as Beneficiary may impose (such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to the terms of this Deed of Trust).

7.    **Impound Accounts.**  During the existence of an Event of Default, upon the request of Beneficiary, Trustor shall pay to Beneficiary, on the day of each calendar month when installment payments are due under the Note secured hereby, an amount, to be estimated by Beneficiary, which will be sufficient to provide for payment, at least thirty (30) days prior to the applicable date(s) such payment would be delinquent, of one or more (as required by Beneficiary) of the following: (i) the Impositions which are required to be paid under section 4 above, (ii) the obligations which are represented, evidenced or secured by Senior Encumbrances and which are required to be paid under section 4 above; and/or (iii) the premiums necessary to maintain the insurance coverage required by section 6 above. Amounts held by Beneficiary hereunder shall not be, nor be deemed to be, trust funds, but may be commingled with the general funds of Beneficiary, and no interest shall be payable in respect thereof. Upon demand of the Beneficiary, Trustor agrees to deliver to Beneficiary such additional monies as are necessary to make up any deficiencies in the amounts necessary to enable Beneficiary to pay such Impositions, obligations which are represented, evidenced or secured by Senior Encumbrances and/or insurance premiums prior to delinquency. Subject to the terms of NRS §§ 100.091 and 106.105, upon the occurrence of an Event of Default as set forth in section 14 below, the Beneficiary may apply to reduction of the sums secured hereby, in such manner as Beneficiary shall determine, any amount remaining to the Beneficiary's credit hereunder.

8.    **Assignment of Rents and Condemnation Proceeds.**

(a)    Trustor hereby irrevocably and absolutely assigns and transfers to Beneficiary, all rents, issues, income, revenues, royalties and profits derived from the Property, or any business activity conducted thereon, and each and every part thereof, including all present and future leases and rental agreements (**"Rents"**) reserving unto Trustor a license to collect the Rents prior to written notice to Trustor of any Event of Default, as defined by section 14 below. Subsequent to such an Event of Default, and written notice to Trustor thereof, the Rents, including those past due, unpaid or undetermined, shall be collected by Beneficiary or its agent, and shall be applied, less costs and expenses of operation and collection, including reasonable attorneys' fees, to any indebtedness and/or obligation secured hereby, and in such order as Beneficiary shall determine. Rights assigned to Beneficiary under this section 8 may be enforced by Beneficiary without regard to the adequacy of the security hereof or the solvency of Trustor by any one or more of

the following methods: (i) appointment of a receiver, (ii) Beneficiary's taking possession of the Property; (iii) Beneficiary's collecting any monies payable under leases or rental agreements directly form the parties obligated for payment; (iv) injunctions; and (v) any other method permitted by law. The collection of the Rents, and the application thereof as aforesaid, shall not cure or constitute a waiver of any default or notice of default hereunder or invalidate any act done pursuant to such notice. Trustor and Beneficiary intend that this assignment shall be a present, absolute and unconditional assignment, not an assignment for additional security only, and shall, immediately upon the execution hereof, subject to the license granted above, give Beneficiary, and its agent, the right to collect the Rents and to apply them as aforesaid. Nothing contained herein, nor any collection of rents, issues, profits and income by Beneficiary, or its agent, or a receiver, shall be construed to make Beneficiary a "mortgagee-in-possession" of the Property so long as Beneficiary has not itself entered into actual possession of the Property or shall be construed to be an assumption of liability by Beneficiary under, or a subordination of, the lien of this Deed of Trust, to any tenancy, lease or option. Trustor agrees to provide Beneficiary with updated leases within thirty (30) days of any request by Beneficiary.

(b)     Any award of damages in connection with any condemnation for public use of, or injury to the Property, or any part thereof, is hereby assigned and shall be paid to Beneficiary, who may apply such monies to the Note, or, in its sole discretion, release such monies received by Beneficiary in the same manner and with the same effect as herein provided for disposition of proceeds of insurance.

9.     **Performance by Trustee or Beneficiary.**

(a)     During the existence of an Event of Default, the Trustee, or Beneficiary, at the election of either of them, but without any obligation to do so, without demand or notice to the Trustor, or any successor in interest of the Trustor and without releasing Trustor from any obligation hereunder, may make such payment or perform such act and incur any liability, or expend whatever amounts, in its absolute discretion, it may deem necessary therefor. All sums incurred or expended by the Trustee or Beneficiary, under the terms hereof, shall become immediately due and payable by the Trustor to the Trustee or Beneficiary when so incurred or expended, and shall bear interest until paid at an annual percentage rate equal to the Default Rate which is set forth by section 14 below. In no event shall payment by Trustee or Beneficiary be construed as a waiver of the default occasioned by Trustor's failure to make such payment or payments.

(b)     If, during the existence of the trust created hereby, there is commenced or pending any suit or action affecting the Property, or any part thereof, or the title thereto, or if any adverse claim for or against the Property, or any part thereof, is made or asserted, the Trustee or Beneficiary may appear or intervene in the suit or action and retain counsel therein and defend same, or otherwise take such action therein as they may be advised, and may settle or compromise same or the adverse claim; and in the behalf and for any of the purposes may pay and expend such sums of money as the Trustee or Beneficiary may deem to be necessary. All such reasonable sums incurred or expended by Trustee or Beneficiary under the provisions of this section shall become immediately due and payable by the Trustor to the Trustee or

Beneficiary when so incurred or expended and shall bear interest until paid an annual percentage rate equal to the Default Rate which is set forth by section 14 below.

(c)     Trustor agrees to pay and discharge all costs, fees and expenses if incurred in connection with any Event of Default by Trustor or the preservation of the trust created hereby, including without limitation (i) reconveyance and foreclosure fees of Trustee, (ii) costs and expenses of Beneficiary or Trustee or any receiver appointed under this Deed of Trust in connection with the operation, maintenance, management, protection, preservation, collection, sale or other liquidation of the trust created hereby or foreclosure of this Deed of Trust, (iii) advances made by Beneficiary to complete or partially construct all or any part of any construction which may have commenced on the Property or otherwise to protect the security of this Deed of Trust, (iv) costs of evidence of title, and (v) the reasonable fees and disbursements of Trustee's and Beneficiary's legal counsel and other out-of-pocket expenses; together with interest on all such amounts until paid at the Default Rate.

10.     **Modifications.** At any time, and from time to time, without liability therefor and without notice to Trustor, upon written request of Beneficiary and presentation of this Deed of Trust and the Note secured hereby for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby or the effect of this Deed of Trust upon the remainder of the Property, Trustee may (i) reconvey any part of the Property; (ii) consent in writing to the making of any map or plat thereof; (iii) join in granting any easement thereon, or (iv) join in any extension agreement or subordination agreement in connection herewith.  The Beneficiary may without notice to or consent of Trustor extend the time of payment of any indebtedness secured hereby to any successor in interest of the Trustor without discharging the Trustor from liability thereon.

11.     **Reconveyance.** Upon receipt of written request from Beneficiary reciting that all sums secured hereby have been paid and upon surrender of this Deed of Trust and the Note secured hereby to Trustee for cancellation and retention, or such other disposition as Trustee, in its sole discretion, may choose, and upon payment of its fees, the Trustee shall reconvey, without warranty all portions of the Property which are then encumbered hereby.  The recitals in such reconveyance of any matters of fact shall be conclusive proof of the truth thereof.  The grantee in such reconveyance may be described in general terms as "the person or persons legally entitled thereto".

12.     **Substitution of Trustee**. The Beneficiary or its assigns may, from time to time, appoint another trustee, or trustees, to execute the trust created by this Deed of Trust or other conveyance in trust.  Upon the recording in the appropriate county of such certified copy or executed and acknowledged instrument, the new trustee or trustees shall be vested with all the title, interest, powers, duties and trusts in the Property which are vested in or conferred upon the original trustee.  If there be more than one trustee, either may act alone and execute the trusts upon the request of the Beneficiary, and all his acts thereunder shall be deemed to be the acts of all trustees, and the recital in any conveyance executed by such sole trustee of such request shall be conclusive evidence thereof, and of the authority of such sole trustee to act in accordance therewith.

9

13.    **Due on Sale, etc.**

(a)    There shall be no **"Transfer of Interest"** (as defined by section 13(b) below) with respect to the Property, without the prior written consent of Beneficiary having first been obtained, and in the event of such a **"Transfer of Interest,"** then, at the option of Beneficiary, any indebtedness or obligation which is secured hereby shall immediately become due and payable, without demand or notice, irrespective of the maturity dates which may be expressed in any Loan Documents evidencing such indebtedness or obligation.

(b)    A **"Transfer of Interest"** shall be deemed to have occurred with respect to the Property (i) if Trustor, without Beneficiary's prior written consent, sell, transfer, encumber, create a junior lien, convey or in any manner alienate any interest in the Property or shall be divested of title to the Property in any manner or way, whether voluntarily or involuntarily (except for bona fide leases made in the ordinary course of business or transfers by a member of Borrower to another member of Borrower or other transfer by any member of Borrower for estate planning purposes), and/or (ii) if the present manager or managers of the Trustor is changed without the Beneficiary's prior written consent, which consent may not be unreasonably delayed, conditioned or withheld.

14.    **Default.**

(a)    The occurrence of any of the following shall, on expiration of any applicable notice or cure period be considered an Event of Default under this Deed of Trust (each an **"Event of Default"**): (i) the occurrence of an Event of Default under that certain Acquisition Loan Agreement, of even date herewith, by and between Trustor and Beneficiary (**"Loan Agreement"**), (ii) failure by Trustor to make any payment when due under the Note within ten (10) days after notice from Beneficiary, (iii) failure by Trustor to comply with any provision of this Deed of Trust, and/or (iv) any Transfer of Interest shall occur.

(b)    The term **"Default Rate"** shall have the meaning therefor set forth in the Note.

15.    **Power of Sale.**  Upon the occurrence of an Event of Default, as defined by section 14 above, and recording of the notice of default and election to sell, as required by Chapter 107 of the Nevada Revised Statutes, then the Trustee, its successors or assigns, on demand by Beneficiary shall sell the Property, in whole or in part, in order to accomplish the objectives of these trusts, in the manner following, namely:

(a)    The Trustee shall first give notice of the time and place of such sale, in the manner provided by the laws of the State for the sale of real property under execution, and may from time to time postpone such sale by such advertisement as it may deem reasonable, or without further advertisement, by proclamation made to the persons assembled at the time and place previously appointed and advertised for such sale, and on the day of sale so advertised, or to which such sale may have been postponed, the Trustee may sell the property as so advertised, at public auction, at the time and place specified in the notice, either in the county in which the

10



Property, or any part thereof, to be sold, is situated, or at the principal office of the Trustee, in its discretion, to the highest cash bidder. The beneficiary, obligee, creditor, or the holder or holders of the Loan Documents secured hereby may bid and purchase at such sale. The Beneficiary may, after recording the notice of breach and election, waive or withdraw the same or any proceedings thereunder, and shall thereupon be restored to its former position and have and enjoy the same rights as though such notice had not been recorded.

(b)     The Trustee, upon such sale, shall make (without warranty), execute and, after due payment made, deliver to purchaser or purchasers, his or their heirs or assigns, a deed or deeds of the Property so sold which shall convey to the purchaser all the title of the Trustor in the Property and shall apply the proceeds of the sale thereof in payment, firstly, to the expenses of such sale, together with the reasonable expenses of this trust, including counsel fees, in a reasonable amount, which shall become due upon any Event of Default; and also such sums, if any, as Trustee or Beneficiary shall have paid, for procuring a search of the title to the Property, of any part thereof, subsequent to the execution of the Deed of Trust; and in payment, secondly, to the obligations or debts secured hereby, and interest thereon then remaining unpaid, and the amount of all other moneys with interest thereon herein agreed or provided to be paid by Trustor in such order as Beneficiary may elect in its sole discretion; and the balance or surplus of such proceeds of sale it shall pay to Trustor, its successor or assigns.

(c)     In the event of a sale of the Property conveyed or transferred in trust, or any part thereof, and the execution of a deed or deeds therefor under such trust, the recital therein of default, and of recording the notice of breach and election to sell, and of the elapsing of the 3-month period, and of the giving of notice of sale, and of a demand by Beneficiary that such sale should be made, shall be conclusive proof of such default, recording, election, elapsing of time, and of the due giving of such notice, and that the sale was regularly and validly made on due and proper demand by Beneficiary; and any such deed or deeds with such recitals therein shall be effectual and conclusive against Trustor, its successors and assigns, and all other persons; and the receipt for the purchase money recited or contained in any deed executed to the purchaser as aforesaid shall be sufficient discharge to such purchaser from all obligation to see to the proper application of the purchase money, according to the trusts aforesaid. With respect to any of the Property which is personal property, Beneficiary shall have, in the jurisdiction in which enforcement of this Deed of Trust is sought, or in any other applicable jurisdiction, all remedies of a secured party under the Nevada Uniform Commercial Code and may require Trustor, on demand, to assemble all such personal property and make the same available to Beneficiary at such places as Beneficiary may select that are reasonably convenient for both parties, whether at the premises of Trustor or elsewhere.

16.    **Deficiency.**  Trustor agrees to pay any deficiency arising from any cause after applications of the proceeds of the sale held in accordance with the provisions section 15 above.

17.    **Remedies Cumulative and Limitation of Waiver.**  The rights and remedies of Beneficiary upon the occurrence and during the continuance of one or more Events of Default may be exercised by Beneficiary, in the sole discretion of Beneficiary, either alternatively, concurrently, or consecutively in any order. The exercise by Beneficiary, or Trustee at the

11

express direction of Beneficiary, of any one or more of such rights and remedies shall not be construed to be an election of remedies nor a waiver of any other rights and remedies Beneficiary might have unless, and limited to the extent that, Beneficiary shall so elect or so waive by an instrument in writing delivered to Trustee. By accepting payment of any sum secured hereby after its due date, Beneficiary does not waive its right either to require prompt payment, when due, of all other sums so secured or to declare default, as herein provided, for failure to so pay.

18.     **Stamps.** If at any time the United States of America, any state thereof or any governmental subdivision of such state shall require revenue stamps to be affixed to the Note or any of the other Loan Documents, or the payment of any other tax paid on or in connection therewith, Trustor shall pay the same with any interest or penalties imposed in connection therewith if Trustor is permitted by law to pay such amount and, if not so permitted then the Note shall immediately be due and payable.

19.     **Law.** Trustor acknowledges and agrees that this Deed of Trust and the other Loan Documents, including provisions with respect to the making of any disbursements, the creation of any monetary obligations and the rights accruing and compensation payable to Beneficiary in connection therewith, shall be governed by and construed in accordance with the laws of the State of Nevada; provided, however, in all instances, Federal Law shall apply to the extent that Beneficiary may have greater rights thereunder.

20.     **Miscellaneous.**

(a)     This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. It is expressly agreed that the trust created hereby is irrevocable by Trustor.

(b)     In the event that Trustor consists of more than one person or entity, the obligations of Trustor hereunder shall be joint and several.

(c)     In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural. The term **"Beneficiary"** includes any future holder of the note secured hereby. The term **"Trustor"** includes the term **"Grantor."**

(d)     Trustor hereby appoints Beneficiary the attorney-in-fact of Trustor to prepare, sign, file and record one or more financing statements, and, during the continuance of an Event of Default, to sign, file and record any documents of title or registration, or like papers, and to take any other action deemed necessary, useful or desirable by Beneficiary to perfect and preserve Beneficiary's security interest against the rights or interests of third persons. The power vested in said attorney-in-fact is and shall be deemed to be coupled with an interest and irrevocable.

12



(e)    If any provision of this Deed of Trust or its application to any person or circumstances is held invalid, the other provisions hereof or the application of the provision to other persons or circumstances shall not be affected.

(f)    The captions or headings at the beginning of each section hereof are for convenience of the parties and are not a part of this Deed of Trust.

(g)    Time is of the essence of each provision of this Deed of Trust.

(h)    Covenants numbered 1, 3, 4, 5, 6, 7, 8 and 9 of Nevada Revised Statutes § 107.030 are incorporated herein by reference. The rate of interest for Covenant Number 4 shall be the Default Rate (defined in the Note). The percent of counsel fees under Covenant No. 7 shall be reasonable. Except for Covenants Numbers 6, 7 and 8, to the extent that any terms of this Deed of Trust are inconsistent with such statutory covenants, the terms of this Deed of Trust will control. Covenants Numbers 6, 7 and 8 shall control over the express terms of any inconsistent terms of this Deed of Trust.

21.    **Notice.**    Except as otherwise provided by law, any notice, request, demand, consent, approval or other communication (**"Notice"**) provided or permitted under this Deed of Trust, or any other instrument contemplated hereby, shall be in writing, signed by the part giving such Notice and shall be given by personal delivery to the other party or by United States certified or registered mail, postage prepaid, return receipt requested, addressed to the party for whom it is intended at its address as set forth below. Unless otherwise specified, Notice shall be deemed given when received, but if delivery is not accepted, on the earlier of the date delivery is refused or the third day after same is deposited in any official United States Postal Depository. Any party from time to time, by Notice to the other parties given as above set forth, may change its address for purpose of receipt of any such communication.

| | |
|---|---|
| Beneficiary: | COMMUNITY BANK OF NEVADA<br>8945 West Russell Road, Suite #300<br>Las Vegas, Nevada 89148<br>Attention:    Commercial Real Estate |
| Trustor: | GRAND CENTRAL SOUTH PARTNERS, LLC<br>3275 S. Jones Boulevard, Suite 103<br>Las Vegas, NV 89146<br>Attention:    Manager |
| Trustee: | CHICAGO TITLE AGENCY OF NEVADA, INC.<br>3980 Howard Hughes Parkway, #100<br>Las Vegas, NV 89169 |

22.    **No Third Party Beneficiaries.**    This Deed of Trust is made and entered into for the sole protection and benefit of the parties hereto, and no other person or entity shall be a direct

13



or indirect beneficiary of, or shall have any direct or indirect cause of action or claim in connection with this Deed of Trust or any of the other Loan Documents.

23. **No Offset.** Under no circumstances shall Trustor fail or delay to perform (or resist the enforcement of ) any of its obligations in connection with any of the Loan Documents because of any alleged offsetting claim or cause of action against Beneficiary (or any indebtedness or obligation of Beneficiary) which has not been confirmed in a final judgment of a court of competent jurisdiction (sustained on appeal, if any ) against Beneficiary, and Trustor hereby waives any such rights of setoff (or offset) which it might otherwise have with respect to any such claims or causes of action against Beneficiary (or any such obligations or indebtedness of Beneficiary), unless and until such right of setoff is confirmed and liquidated by such a final judgment. Trustor further waives any right that it might otherwise have to require a marshaling of any security of Beneficiary or to direct the order in which Beneficiary pursues its rights or remedies with respect to any of its security.

24. **Continuation of Payments.** Notwithstanding any taking by eminent domain or other governmental action causing injury to, or decrease in value of, the Property and creating a right to compensation therefor, Trustor shall continue to make the required payments of principal and interest on the Note. If, prior to the receipt by Beneficiary of such award or compensation, the Property shall have been sold in any action or proceeding to foreclose this Deed of Trust, Beneficiary shall have the right to receive said award or compensation to the extent of any deficiency found to be due upon such sale, with interest hereon, whether or not a deficiency judgment of this Deed of Trust shall have been sought or recovered, together with reasonable counsel fees and the costs and disbursements incurred by Beneficiary in connection with the collection of such award or compensation.

25. **Security Agreement.**

(a)    With respect to all of the personal property that is included in the description of the Property (**"Collateral"**), this Deed of Trust shall constitute a security agreement under Article 9 of the Nevada Uniform Commercial Code, and Trustor hereby grants Beneficiary a security interest in the Collateral for the purpose of securing all of Trustor's obligations under the Note, and grants Beneficiary all rights of a secured party under the provisions of Article 9 of the Nevada Uniform Commercial Code in connection therewith.

(b)    Without limiting the generality of any other provision of this Deed of Trust, Trustor further covenants that the Collateral will be kept on or at the Property, that Trustor will not sell or otherwise dispose of the Collateral, that Trustor will keep the Collateral in good condition and repair, that Beneficiary may inspect and examine the Collateral at any reasonable time, that the Collateral is free and clear of any other liens or encumbrances, and that the security interest granted hereby extends to all proceeds and replacements for any or all of the Collateral.

(c)    If there is a continuing Event of Default, beneficiary may take possession of any part of all of the Collateral, and thereafter take all actions in connection therewith that it deems necessary or appropriate to protect or preserve the Collateral, require Trustor to assemble the

Collateral at a place designated by Beneficiary, sell the Collateral at a public or private sale in such order as Beneficiary may determine (independent of any Trustee's sale hereunder), and exercise any and all other rights extended to secured parties under the terms of Article 9 of the Nevada Uniform Commercial Code.

(d) Trustor agrees that Beneficiary may file such Nevada Uniform Commercial Code financing statements with respect to Trustor as Beneficiary deems necessary to perfect the security interest granted hereby.

26.  **Fixture Filing.**  This Deed of Trust covers goods which are or are to become fixtures related to the Property, and constitutes a **"fixture filing"** with respect thereto, showing Trustor to be **"debtor"** and Beneficiary to be **"secured party,"** for purposes of the Nevada Uniform Commercial Code.

27.  **Warranty of Title.**  Trustor warrants that it is the sole owner of good and marketable unencumbered title to the Real Property, and Trustor will forever defend the same against all claims and persons whomsoever, unto Beneficiary, its successors and assigns, subject only to the matters approved by beneficiary as acceptable exceptions to title pursuant to the provisions of the closing instruction letter delivered herewith to the title insurance company insuring the lien of this Deed of Trust. All of Trustor's present and future right, title and interest in the Real Property shall be subject to the lien and other terms and provisions of this Deed of Trust regardless of the time that any such right, title and interest is created, obtained by or conveyed, transferred or assigned to Trustor.

28.  **Variable Interest Rate.**  The rate of interest set forth in the Note is a variable interest rate, and may change from time to time. All such interest shall be secured by this Deed of Trust with the same lien priority position as the principal to which it relates.

29.  **Appointment of a Receiver.**  Following the occurrence and during the continuance of an Event of Default, a receiver may be appointed, with or without notice, where upon the receiver shall immediately be entitled to possession of all of the Property. Beneficiary's right to a receiver shall be absolute and unconditional. The receiver may be appointed without regard to the adequacy of any security for the Note and Trustor shall immediately surrender possession of the Property to the receiver upon his appointment. The receiver shall have the right to take possession of the Property, to collect the Rents therefrom, to complete the construction of any structures or improvements in progress thereon, to lease the Property or any part thereof, to operate any business thereon, and to exercise such other rights as may be granted by the court pending such proceedings, and up to the time of redemption of issuance of a Trustee's deed. Rents shall be applied to the costs and expenses of the receiver and the receivership, including any costs of construction, and the balance shall be applied in the manner provided for herein. The receiver shall have the power to borrow money from any person, including Beneficiary, for expenses of operating, preserving, maintaining and caring for the Property, and completing the construction in progress of any improvements or structures upon the Property, and all such borrowed sums, together with interest thereon, whether expended or not, shall be added to the obligations secured hereby. In addition, any costs incurred, or

advances made, by beneficiary in connection with the implementation or operation of the receivership, shall be added to the obligations secured hereby, bear interest at the Default Rate, be guaranteed by any guarantee(s) now or thereafter relating to the obligations secured hereby and be secured by this Deed of Trust. Trustor hereby waives any right it may have under Nevada. Revised Statutes § 107.100 to require Beneficiary to make any showing or meet any obligation as a condition to the appointment of a receiver.

      30.   **Reserved.**

      **31.   Waiver of Jury Trial. Trustor and Beneficiary each (a) covenants and agrees not to elect a trial by jury with respect to any issue arising out of this instrument or the relationship between the parties as borrower and lender that is triable of right by a jury and (b) waives any right to trial by jury with respect to such issue to the extent that any such right exists now or in the future. This waive of right to trial by jury is separately given by each party, knowingly and voluntarily with the benefit of competent legal counsel.**

      32.   **Waiver of Marshaling.** The extent permitted by law Trustor waives (i) the benefit of all present or future laws providing for any appraisement before sale or any portion of the Property, (ii) all rights of redemption, valuation, appraisement, stay of execution, notice of election to mature or declare due the whole of the debts and/or obligations secured by this Deed of Trust and marshaling in the event of foreclosure of the lien created by this Deed of Trust, (iii) all rights and remedies which Trustor may have or be able to assert by reason of the laws of the State of Nevada pertaining to the rights and remedies of sureties, (iv) the right to assert any statute of limitations as a bar to the enforcement of the lien of this Deed of Trust or to any action brought to enforce the Note or any other obligation secured by this Deed of Trust, (v) any rights, legal or equitable, to require marshaling of assets or to require upon foreclosure sales in a particular order, including any rights under Nevada Revised Statutes. Beneficiary shall have the right to determine the order in which any or all of the Property shall be subjected to the remedies provided by this Deed of Trust. Beneficiary shall have the right to determine the order in which any or all portions of the indebtedness and obligations secured by this Deed of Trust are satisfied from the proceeds realized upon the exercise of the remedies provided by this Deed of Trust.

      33.   **Certification of Loan Documents.** Within ten (10) days after a request from Beneficiary (but not more frequently than once a year), Trustor shall deliver to Beneficiary a written statement, signed and acknowledged by Trustor, certifying to Beneficiary or any person designated by the Beneficiary, as of the date of such statement (i) that the Loan Documents are unmodified and in full force and effect (or if there have been modifications, that the Loan Documents are in full force and effect as modified and setting forth such modifications), (ii) the unpaid principal balance of the Note, (iii) the date to which interest under the Note has been paid, (iv) that Trustor is not in default in paying the indebtedness or in performing or observing any of the covenants and agreements contained in this Deed of Trust or any other Loan Document (or, if the Trustor is in default, describing such default in reasonable detail), (v) whether or not there are then existing any offsets or defenses known to Trustor against the enforcement of any right or remedy of Beneficiary under the Loan Documents, and (vi) any



additional reasonable facts requested by the Beneficiary. Failure to timely issue the requested certificate shall, at the election of the Beneficiary, be an Event of Default by the Trustor.

**TRUSTOR:**

GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited liability company

By:  Grand Central Holdings, LLC, a Nevada limited liability company, Developer Manager

By:  The Merrill Group of Companies, LLC, a California limited liability company, Manager

By: _____
David M. Frank, Manager

By:  Pierce Development Incorporated, a Nevada corporation, Manager

By: _____
Craig Katchen, President

17



additional reasonable facts requested by the Beneficiary. Failure to timely issue the requested certificate shall, at the election of the Beneficiary, be an Event of Default by the Trustor.

**TRUSTOR:**

GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited liability company

By: Grand Central Holdings, LLC, a Nevada limited liability company, Developer Manager

    By: The Merrill Group of Companies, LLC, a California limited liability company, Manager

        By: _____
            David M. Frank, Manager

    By: Pierce Development Incorporated, a Nevada corporation, Manager

        By: _____
            Craig Katchen, President

17

STATE OF NEVADA  }
         } ss
COUNTY OF CLARK }

   This instrument was acknowledged before me on December__, 2007, by David M. Frank, as Manager of The Merrill Group of Companies, LLC, a California limited liability company, Manager of Grand Central Holdings, LLC, a Nevada limited liability company, Developer Manager of GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited-liability company.

             SEE ATTACHED
               NOTARY PUBLIC

STATE OF NEVADA  }
         } ss
COUNTY OF CLARK }

   This instrument was acknowledged before me on December__, 2007, by Craig Katchen, President of Pierce Development Incorporated, a Nevada corporation, Manager of Grand Central Holdings, LLC, a Nevada limited liability company, Developer Manager of GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited-liability company.

             _____
               NOTARY PUBLIC

18

STATE OF NEVADA    }
                } ss
COUNTY OF CLARK   }

    This instrument was acknowledged before me on December__, 2007, by David M. Frank, as Manager of The Merrill Group of Companies, LLC, a California limited liability company, Manager of Grand Central Holdings, LLC, a Nevada limited liability company, Developer Manager of GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited-liability company.


_____
NOTARY PUBLIC

STATE OF NEVADA    }
                } ss
COUNTY OF CLARK   }

    This instrument was acknowledged before me on December 27, 2007, by Craig Katchen, President of Pierce Development Incorporated, a Nevada corporation, Manager of Grand Central Holdings, LLC, a Nevada limited liability company, Developer Manager of GRAND CENTRAL SOUTH PARTNERS, LLC, a Nevada limited-liability company.

*see attached*
NOTARY PUBLIC

18

STATE OF CALIFORNIA          )
                             ) ss.
COUNTY OF LOS ANGELES        )

On December 26, 2007, before me, __Linda E. Allen__, a Notary Public,

personally appeared _____David M. Frank_____, proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary

LINDA E. ALLEN
Commission # 1577771
Notary Public - California
Los Angeles County
My Comm. Expires May 10, 2009

# CALIFORNIA ALL-PURPOSE
# CERTIFICATE OF ACKNOWLEDGMENT

State of _CA_ )

County of _San Diego_ )

On _Dec 27 2007_ before me, _Jin S deWolf, Notary Public_
<span>(here insert name and title of the officer)</span>

personally appeared _Craig Katchen_

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
Signature of Notary Public

> JIN S. DEWOLF
> COMM. #1744873
> NOTARY PUBLIC-CALIFORNIA
> SAN DIEGO COUNTY
> My Comm. Expires MAY 18, 2011
> BCA1

(Seal)

## ADDITIONAL OPTIONAL INFORMATION

### DESCRIPTION OF THE ATTACHED DOCUMENT

_____
(Title or description of attached document)

_____
(Title or description of attached document continued)

Number of Pages _____ Document Date_____

_____
(Additional information)

### CAPACITY CLAIMED BY THE SIGNER
☐ Individual (s)
☐ Corporate Officer
_____
(Title)
☐ Partner(s)
☐ Attorney-in-Fact
☐ Trustee(s)
☐ Other _____

### INSTRUCTIONS FOR COMPLETING THIS FORM
*Any acknowledgment completed in California must contain verbiage exactly as appears above in the notary section or a separate acknowledgment form must be properly completed and attached to that document. The only exception is if a document is to be recorded outside of California. In such instances, any alternative acknowledgment verbiage as may be printed on such a document so long as the verbiage does not require the notary to do something that is illegal for a notary in California (i.e. certifying the authorized capacity of the signer). Please check the document carefully for proper notarial wording and attach this form if required.*

- State and County information must be the State and County where the document signer(s) personally appeared before the notary public for acknowledgment.
- Date of notarization must be the date that the signer(s) personally appeared which must also be the same date the acknowledgment is completed.
- The notary public must print his or her name as it appears within his or her commission followed by a comma and then your title (notary public).
- Print the name(s) of document signer(s) who personally appear at the time of notarization.
- Indicate the correct singular or plural forms by crossing off incorrect forms (i.e. he/she/they, is /are ) or circling the correct forms. Failure to correctly indicate this information may lead to rejection of document recording.
- The notary seal impression must be clear and photographically reproducible. Impression must not cover text or lines. If seal impression smudges, re-seal if a sufficient area permits, otherwise complete a different acknowledgment form.
- Signature of the notary public must match the signature on file with the office of the county clerk.
  - ❖ Additional information is not required but could help to ensure this acknowledgment is not misused or attached to a different document.
  - ❖ Indicate title or type of attached document, number of pages and date.
  - ❖ Indicate the capacity claimed by the signer. If the claimed capacity is a corporate officer, indicate the title (i.e. CEO, CFO, Secretary).
- Securely attach this document to the signed document

**EXHIBIT "A"**

All that certain real property situated in the County of Clark, State of Nevada, described as follows:

A portion of Lot Seven (7) of Parkway Center, as shown by map thereof on file in Book 53 of Plats, Page 61 in the office of the County Recorder of Clark County, Nevada lying within the South Half (S ½) of the Southeast Quarter (SE ¼) of Section 33, Township 20 South, Range 61 East, M.D.M., being described as follows:

Commencing at the most Northerly corner of said Lot Seven (7) on the Easterly right of way line of Grand Central Parkway (varying width); thence along the Southwesterly line of Lot Six (6) of said "Parkway Center", South 62°04'44" East, 352.00 feet to the Point of Beginning; thence South 27°55'16" West, 275.81 feet to a point on the Easterly line of an easement to the City of Las Vegas described by Document recorded May 13, 1996 in Book 960513 of Official Records as Instrument No. 01711 in the Clark County Recorder's Office, Clark County, Nevada; thence along said Easterly line the following Four (4) courses; from a tangent bearing South 27°55'16" West, curving to the right along the arc of a 210.50 foot radius curve, concave Westerly, through a central angle of 26°22'49", an arc length of 96.92 feet to a point of reverse curvature through which a radial line bears South 35°41'55" East; thence curving to the left long the arc of a 25.00 foot radius curve, concave Easterly, through a central angle of 76°29'39", an arc length of 33.38 feet; thence South 22°11'34: East, 7.39 feet; thence curving to the left along the arc of a 25.00 foot radius curve, concave Northeasterly, through a central angle of 38°12'48", an arc length of 16.67 feet to a point on the Northeasterly right of way line of Iron Horse Court (varying width); thence along said right of way line, from a tangent curve bearing South 60°23'35" East, curving to the right along the arc of a 45.00 foot radius curve, concave Southwesterly, through a central angle of 60°41'24", an arc length of 47.67 feet to a point on the Northerly line of Lot Eight (8) of said "Parkway Center" to which a radial line bears South 89°42'11" East; thence along said Northerly line, South 89°42'11" East, 399.57 feet to a point on the Northeasterly line of the Union Pacific Railroad right of way; thence along said right of way line, North 27°55'16" East, 249.02 feet to a point on the Southwesterly line of said Lot Six (6); thence along said Southwesterly line, North 62°04'44" West, 397.99 feet to the Point of Beginning.

Said land is also known on a Record of Survey filed in File 139, Page 82 of Surveys recorded July 30, 2004 in Book 20040730 Document No. 00730 of Official Records.